### DAVID W. ABBEY v. NORTHERN STATES POWER COMPANY.[1]

January 22, 1937.

No. 30,949.

*Briggs, Weyl & Briggs* and *Arthur M. Lystad,* for appellant.

*D. C. Sheldon, Thomas Mohn,* and *Horace W. Mohn,* for respondent.

[1] Reported in 271 N. W. 122.

LORING, JUSTICE.

This is an appeal from a judgment for plaintiff, who claims he was injured by being thrown from a truck belonging to the defendant which at the time was being driven by Charles Mott.

Mott was a part-time employe of defendant at Pine Island. September 17, 1934, the morning of the accident, he went to defendant's office in that village and inquired if there was work for him that day. Bunn, the man in charge of defendant's business, told him that a house was to be moved and engaged Mott to "take care of the wires." Bunn took Mott to the house that was to be moved and left him there. During the forenoon Mott took care of the wires encountered, with one exception, by lifting them up and holding them above the roof until the house had passed. These wires were handled "hot." It was necessary to cut or disconnect one wire. Service on that was restored as soon as the house had passed.

Bunn, defendant's manager, left town in the forenoon, and the Ford truck later involved in the action was left standing in front of his office. At lunch time Mott saw it there and drove it to the scene of the house-moving. After lunch it became necessary to get a capstan and cable in order to pull the house up a hill, and Henke, who had charge of the moving operations, remarked that he would have to get a truck to get the equipment. Thereupon Mott offered to take defendant's truck for that purpose, and he and Henke walked over to the truck and got in. They claim they saw nothing of Abbey, the plaintiff, as they walked over to the truck.

Abbey was an employe of Henke working on the house-moving operation. Abbey testified that he was standing close by when the conversation between Mott and Henke took place and that he immediately preceded them to the truck and seated himself upon a box on the platform part of the truck. He was thrown off and injured when it was turning around at about 15 miles an hour. He asserted that the truck was whirled around with considerable violence and with a jerk at the time when Mott apparently changed from first to second gear. His testimony is controverted by other witnesses, but on the record the jury might find that Abbey must have been seen by Mott on the box which he occupied upon the

truck and that he was thrown off it due to the rough handling of which Mott was alleged to be guilty.

It is the plaintiff's claim that [2]L. 1933, c. 351, § 4 (3 Mason Minn. St. 1934 Supp. § 2720-104), known as the financial responsibility act, applies to the situation because he alleges that Mott was operating the truck with the implied consent of the defendant. That statute provides in substance that when any motor vehicle shall be operated by any person with the consent of the owner, express or implied, the operator shall be deemed the agent of the owner in such operation. In the case at bar there was no express consent by the defendant or any of its authorized agents to the use of this vehicle by Mott. The testimony goes no further than to show that the truck was commonly used by defendant's employes in the transportation of defendant's property and occasionally for the transportation of its employes to and from their place of employment. The truck had not been used in the forenoon by Mott, and there was no occasion for him to use it in connection with taking care of the wires. He found the truck not in use in front of the company's office and appropriated it to go to the place where he was working. Upon the record, we assume the implied consent of the company might be inferred for the use of the truck to the extent that he used it in getting to the work. But the question in this case is whether or not that implied consent extended to the use of the truck by Mott when he volunteered, for the convenience of Henke, to take the defendant's truck and go with Henke to the schoolhouse for the purpose of obtaining Henke's equipment necessary for the movement of the house. The evidence does not justify an inference of implied consent to use the car for any personal purpose of Mott's. Nor does it justify an implied consent for Mott to use it in connection with any other person's business. Had Mott taken the car to go on a fishing expedition of his own it is

[2]"Whenever any motor vehicle, after this Act becomes effective, shall be operated upon any public street or highway of this State, by any person other than the owner, with the consent of the owner express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

quite obvious that it would not be within the consent implied from the circumstances presented by this record. It also seems to us that it is just as obvious that he had no right or implied consent to use the truck in the furtherance of any other person's business. For instance, had Mott taken the car and gone to some other town to get Henke's equipment, it would seem quite obvious that it was far beyond any proper inference of implied consent.

The statute relied upon imposes liability upon owners who lend their cars. Psota v. Long Island R. R. Co. 246 N. Y. 388, 393, 159 N. E. 180, 181, 62 A. L. R. 1163. Speaking of the New York statute, which is similar to ours, the court said:

"Prior to the enactment of this section, the law was that an owner was not liable for the negligence of a person to whom he had loaned his car, whether that person were a member of his family, a servant on a personal errand or a stranger. Potts v. Pardee, 220 N. Y. 431, 116 N. E. 78, 8 A. L. R. 785; Van Blaricom v. Dodgson, 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917F, 363. The Legislature determined to change this law and did change it by this section of the Highway Law so as to make the owner liable for the negligence of a person to whom he loaned the car in connection with its operation upon the highway. Such person was no longer a stranger to the owner, but became to this extent the owner's agent. The owner assumed this liability under the law and took this risk in loaning his car. Fluegel v. Coudert, 244 N. Y. 393, 155 N. E. 683. But the Legislature went no further; it did not otherwise change any of the rules of liability; that is, it did not extend the liability of the master for the acts of his servant. It placed the borrower of a car in the same position toward the lender as that of master and servant, principal and agent, but it did not increase the liability of the lender beyond that of the master for those acts of his servant coming within the scope of his employment."

So here the implied consent to use defendant's truck went no further than the scope of Mott's employment, which was to "take care of the wires." He might use the truck to transport property which he needed for that purpose or to take himself back and forth

to work. But it was no more within the scope of his employment to transport Henke's equipment than it would have been for him to hitch the truck to the house to assist in pulling it. "An owner in loaning his car may reasonably restrict the uses to which it may be put; consequently, its employment for a proscribed purpose cannot be a permitted use." Arcara v. Moresse, 258 N. Y. 211, 214, 179 N. E. 389. We see no difference between putting the car to a proscribed use and going beyond the scope of a permission, express or implied. In Chaika v. Vandenberg, 252 N. Y. 101, 105, 169 N. E. 103, 104, the court said: "When the accident occurred the son was operating the car in New York City. The restricted permission did not cover such use. At that time the son was operating the car illegally and without the assent of the owner." We cannot extend the language of the statute beyond its fair import and say that the statute applies whenever a person takes a car by the express or implied consent of the owner and uses it beyond the limits of that consent. Grave questions would arise if we so held. It will therefore be seen that much the same question is presented as would be if the statute had not been passed. The implied consent or permission is coextensive with the scope of Mott's employment to take care of the wires.

The plaintiff endeavors to meet this situation by the argument that Mott was furthering the interests of the company within the scope of his employment by expediting the movement of the house in that the quicker the house was moved the shorter would be the period of time for which the company would have to pay him for taking care of the wiring. We think this is altogether too tenuous a thread upon which to hang liability. Expediting the movement of the house aside from "taking care of the wires" was beyond the purpose of Mott's express employment. The implied consent went no further than that purpose.

In Adams v. Nathanson, 161 Minn. 433, 201 N. W. 927, 928, an employe, Frisch, was given a car to take a message to another employe, Hubbard, who had been injured, and if his condition justified bring him back to the garage. Instead of doing so Frisch took the injured man, at his request, to his doctor, and an accident

occurred on the return journey to Hubbard's house. Mr. Commissioner Lees, speaking for this court, said [161 Minn. 437]:

"It is argued that Hubbard could answer Albenson's inquiry more definitely after he had been examined by the doctor, and that undoubtedly Albenson would have permitted Frisch to take Hubbard to the doctor's office if permission had been asked. In other words, the argument is that Frisch did not exceed his implied authority. The argument is plausible and has received careful consideration. It suggests the only possible basis for a recovery, but our conclusion is that it is not a sufficient basis. At the time of the accident Frisch was serving Hubbard and not the defendants. The time within which he should have performed the errand on which he was sent had expired. His discretionary powers were limited and the conclusion that he exceeded them cannot be escaped."

The defendant was not engaged in moving the house. Its duty in connection with the moving was merely to take care of the wires as they were reached. It performed that duty by engaging Mott for that purpose. Its employment of him went no further. He was not within the scope of his employment or of the corresponding implied consent or permission to use the car when he engaged himself and the truck in Henke's business of getting the capstan. See Rowland v. Spalti, 196 Iowa, 208, 194 N. W. 90; Curry v. Bickley, 196 Iowa, 827, 195 N. W. 617; Maine v. James Maine & Sons Co. 198 Iowa, 1278, 201 N. W. 20, 37 A. L. R. 161; Heavilin v. Wendell, 214 Iowa, 844, 241 N. W. 654, 83 A. L. R. 872; Robinson v. Shell Petroleum Corp. 217 Iowa, 1252, 251 N. W. 613.

Reversed and judgment ordered for defendant notwithstanding the verdict.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot subscribe to the opinion of the majority.

L. 1933, c. 351, § 4, is intended to impose upon an automobile owner liability for the negligent acts of one using his automobile with permission, whether such permission be express or implied.

In this case the evidence clearly shows that the defendant's employe, Mott, had permission to use the defendant's truck. The

opinion of the majority of the court places upon that permission a limitation which is not warranted by the record.

The employe, Mott, by using the truck to expedite the movement of the house, was, in my opinion, furthering the interests of the defendant in facilitating the carrying on of the work with the electric wires. It is certain that the work with the electric wires would be delayed considerably if the movement of the house were not expedited.

The fact that the truck was so used is not, as intimated in the majority opinion, "a thread upon which to hang liability." Liability in cases of this kind hinges upon permission to use the automobile. The question is whether or not the scope of permission was exceeded by the particular use. The jury has found that it was not, and, considering the state of the record, there is, in my opinion, no reasonable ground for disturbing that decision. Compare Steinle v. Beckwith, 198 Minn. 424, 270 N. W. 139.

The judgment should be affirmed.