# RUBY RANTHUM v. STERLING MOTOR COMPANY AND ANOTHER.[1]

February 11, 1938.

No. 31,367.

*L. H. Dow,* for appellant.

*Hunt & Palmer,* for respondent Sterling Motor Company.

HILTON, JUSTICE.

Plaintiff, suing to recover damages for injuries sustained in an automobile accident, recovered a verdict against the Sterling Motor Company and Lloyd Ferguson. The lower court thereafter, on motion of the company, ordered judgment notwithstanding the verdict in its favor, and this appeal is from that order.

Ferguson is not a party to this appeal, and the company will hereinafter be referred to as the defendant. It is a corporation engaged in the sale of Ford automobiles and trucks in Duluth, Minnesota. Ferguson was employed by the defendant as a salesman of both new and used cars and worked entirely on a commission basis.

[1]Reported in 277 N. W. 547.

As to the sale of new cars, he was required to own a Ford automobile and use it for demonstration purposes. His time was substantially his own, and he was at liberty to solicit sales, entertain prospective customers, and demonstrate his car at any time or place.

However, the arrangement between the defendant and its salesmen, including Ferguson, respecting the use and operation of used cars by them was materially different from that concerning the use of their own cars. The used cars were kept on a lot adjoining defendant's garage and were in charge of a foreman. The only purpose for which salesmen were permitted to take these cars was that of demonstrating to a prospective customer the particular car in which he was interested. On such occasions salesmen were required to secure specific permission to take the car from whoever was in charge and to return the car to the garage by nine o'clock in the evening, unless given permission otherwise. The defendant kept a record of all used cars taken out and the time they were returned.

Saturday, October 17, 1936, Ferguson had a prospect for a Ford used car. This party lived in Morgan Park, which is located in the southwest end of Duluth, several miles from defendant's place of business. Sometime early in the evening Ferguson asked the foreman for permission to take one of the used cars for the purpose of demonstrating it to this prospect. He made no mention of any intention to use the car for any other purpose than this. He was allowed to take a used Ford two-door sedan, but was given express instructions to return it before the garage closed at 12 o'clock that night.

Ferguson did not find his Morgan Park prospect at home, but, instead of returning the car, drove to the main business section of Duluth and purchased some groceries. Upon reëntering the car and while driving along a street in Duluth, he saw an acquaintance, a Miss Lorraine Johnson, and her sister, Mrs. Olga Kessler, standing on the sidewalk. He stopped and gave them a ride to Mrs. Kessler's home, but made arrangements to return and take them out in the car, assertedly for the purpose of demonstrating it to them. Ferguson then drove to Morgan Park a second time, but was again unable to contact his prospective purchaser. He re-

turned to Mrs. Kessler's house as previously arranged and there met the plaintiff, who had stopped in for an evening visit. She accepted Ferguson's invitation to ride in the car with the other ladies. There is some evidence that plaintiff and her husband were also interested in purchasing a car.

Ferguson drove directly to Morgan Park but was still unsuccessful in his efforts to find his prospect. He then stated to his passengers that he had a man to see on business in Oliver, Wisconsin, a distance of some four or five miles across the state line, and that he would return immediately. The three ladies objected to going, but finally consented. The party arrived at Oliver about 11 o'clock and immediately entered a tavern, where Ferguson bought four glasses of beer. He stayed about an hour and then left the women and went to another tavern in an effort to see his Oliver business prospect. He returned in about an hour and a half, and shortly thereafter he and his guests got into the car, made two brief stops at taverns, and then started for Duluth. On this return trip they were also accompanied by a young man who was invited by Ferguson to ride along. The accident in which plaintiff was injured happened on the return trip on an interstate bridge between Minnesota and Wisconsin. The time was about 2:30 in the morning. While many of the facts as stated, particularly those relating to the purpose of the trip to Oliver and what occurred there, are sharply disputed, all differences have been resolved in favor of the plaintiff.

We are of the view that the granting of defendant's motion for judgment was unquestionably correct. The verdict could not be permitted to stand. Plaintiff relies upon 3 Mason Minn. St. 1936 Supp. § 2720-104, which provides:

"Whenever any motor vehicle, * * * shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

We have had occasion to consider this statute many times in recent months. It is now settled that the owner's consent to the use

of his vehicle by another may be of a limited and restricted nature, and he is not responsible by virtue of the statute for the latter's negligence if the vehicle is used outside the limits of the consent given. Consent to the use must exist at the time and place the accident occurs. Abbey v. Northern States Power Co. 199 Minn. 41, 271 N. W. 122; Patterson-Stocking, Inc. v. Dunn Bros. Storage Warehouses, Inc. 201 Minn. 308, 276 N. W. 737.

The trip to Oliver was not for the purpose of demonstrating the car to plaintiff and her friends. Plaintiff's witness, Mrs. Kessler, so testified, and the evidence permits of no other conclusion. The ladies all objected to the trip. The evidence shows that they went along only because Ferguson promised to come right back, and that the trip was made, not to demonstrate the car to them, but to enable Ferguson to interview a business prospect. The demonstration of the car to them ended before the trip to Oliver was undertaken.

Ferguson was given the car for the sole purpose of demonstrating it to prospective purchasers of that car. His prospect in Oliver was in no way interested in the car Ferguson was driving, and this was known to him. There is evidence that he also talked to another prospect in Oliver, but not concerning the car in his possession. Ferguson was not allowed to use defendant's used cars for the purpose of finding, interviewing, or entertaining prospective customers. Defendant in no way consented, expressly or impliedly, to the trip to Oliver or anything connected therewith. Those events, covering a period of some three and a half hours, were against its express rules.

Unless the car was being demonstrated to a prospective purchaser, Ferguson was required to have it back at the garage by 12 o'clock, and he also violated this express order. He did not even intend to return the car that night. The garage was closed, and he expected to keep it at his home until morning.

The conclusion is inescapable that when the accident occurred the car was being driven at a forbidden time and for a forbidden purpose. This defeats plaintiff's right to recover from the defendant. In her brief she has repeatedly confused the evidence relating to Ferguson's use of his own car in defendant's business and his

operation of used cars. With the former he was allowed utter freedom; with the latter, he was subject to the strict rules of the defendant.

What has been said disposes of the only question raised on this appeal.

Affirmed.