FRITZ ANDERSON v. STANDARD OIL COMPANY AND ANOTHER.[1]

January 27, 1939.

No. 31,850.

[1]Reported in 283 N. W. 571.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *Clyde W. Fiddes,* for appellant.

*Olof L. Bruce,* for respondent.

STONE, JUSTICE.

Defendant Standard Oil Company appeals from the order denying its motion for judgment notwithstanding the verdict for plaintiff or a new trial. The verdict was also against defendant Fike, but he is not a party to this appeal. The Standard Oil Company will be mentioned as though it were the only defendant.

During 1936 and most of 1937 Mr. Fike was in the employ of defendant as a sales supervisor in a considerable territory in southwestern Minnesota. His headquarters were at Winthrop. His territory was 80 miles from Minneapolis at its closest point. Defendant furnished him an automobile for use in its business exclusively. He had it in Minneapolis and was using it there December 29, 1936. At about six p. m. of that day, through Fike's negligence in operating the car, plaintiff was seriously injured. The jury awarded him $6,000.

The jury was instructed to find against Mr. Fike. They found also against defendant, but not because at the moment Fike was en-

gaged in defendant's business. The issue submitted as to defendant was whether it had consented to Fike's use of the car, under the statute, L. 1933, c. 351, § 4, 3 Mason Minn. St. 1938 Supp. § 2720-104. It declares that whenever an automobile is "operated" by another with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed the agent of the owner of such motor vehicle.

Mr. Fike was on vacation from his employment from December 24, 1936, to January 3, 1937, inclusive. During that period his duties and functions as defendant's salesman were suspended. But defendant had called a sales conference to be held in Minneapolis January 4 and 5, 1937. Mr. Fike was scheduled by defendant to speak at that conference on two specified subjects which were his "assignments." His superior had given him definite instructions in the matter, including one to have a written summary of the "presentation" in the Minneapolis office on or before December 28.

So far there is no controversy. There is evidence from which the jury could have found the following additional circumstances. If there was company business requiring Fike's presence in Minneapolis, he would go to that city with or without special request from a superior to do so, and would use the company car. To such use no objection had been made by defendant. Fike had made an earlier speech which had met with criticism from one of his superiors. He testified that he had a telephone conversation with his critic and got permission to go to Minneapolis during his vacation in order that he might "get some more data before he accepted that topic to talk on, because it was a rather disagreeable topic" to him. He got such consent, if his testimony is to be believed. When it was given, nothing was said about whether the company car was to be used.

Mr. Fike arrived in Minneapolis from Winthrop late in the forenoon of December 28. There he conferred in defendant's Minneapolis office with his superiors concerning the sales conference, and particularly his speaking part therein. He left that office early in the afternoon of the 29th. He then made a personal trip to St. Paul, and returned to Minneapolis (so his testimony indicates) on his

way home to Winthrop. In parking his car at about six p. m. in order to call on a friend in Minneapolis, he negligently injured plaintiff.

■ Under such circumstances, appearing from the record, we conclude that the verdict should be sustained. Certainly it cannot be said that the jury transgressed the bounds of reason in finding that there was consent for Fike's use of the car in coming to Minneapolis and returning to Winthrop. The fact that he was then on vacation operates against rather than for defendant. His preparation for the sales conference could well be considered his employer's business. No other company activity of his was at the time within the contemplation of himself or his employer. Given consent for the use of the car for such a vacation journey and on such an occasion, the conclusion of the jury is not to be disturbed that it included reasonable use of the car for personal purposes of the user in Minneapolis.

There is the added circumstance that the evidence justifies the inference that at the moment of the accident Mr. Fike had resumed the return journey from Minneapolis to Winthrop. While the intended call upon his friend was not within the scope of his employment, it cannot be said, upon this record, that it was outside the scope of defendant's consent to the use of the car.

By written instructions defendant had forbidden its employes to use company cars for other than "company business." However explicit such an instruction, it cannot narrow a broader consent thereafter given. There is evidence from which the jury could reasonably have found that Fike made the trip in question to Minneapolis on company business, and that there was implied consent that he might use his company car for the occasion.

■ The statute has broadened in significant fashion the operative field of the rule of *respondeat superior*. The scope of his employment, where the negligent operator is the employe of the owner, may be relevant in determining what consent has been given and in determining its scope. But scope of employment is not under the statute the test of liability. The coverage of the consent is the

test. In consequence, whatever the scope of the employment in such case, there is liability upon the master if at the determinative moment the use of his car by the servant is within the scope of the consent given for such use. We have so held in Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582. See also 21 Minn. L. Rev. 823, *et seq.*

In many cases, where recovery, if any, must rest upon implied rather than express consent of the owner, the scope of the user's employment by the owner will limit the reach of the consent. Such was the situation in Abbey v. Northern States Power Co. 199 Minn. 41, 271 N. W. 122, and Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101. They are distinguishable for present purposes because here there is evidence of a special consent for a special occasion, and the use at the determinative moment was properly found to be within the consent and for the occasion. *Cf.* Guerin v. Mongeon, 49 R. I. 414, 143 A. 674.

The vicarious liability law of Massachusetts, construed along with the motor vehicle insurance statutes, has resulted in the conclusion that:

"The liability of the insurer should, so to speak, run with the car unaffected by the owner's action unless its presence on the public ways was without his sanction."

The result was that, in Guzenfield v. Liberty Mut. Ins. Co. 286 Mass. 133, 136, 190 N. E. 23, 24, the owner's insurer was held liable for the result of an accident happening while the car was operated by a third person with the consent and under the supervision of the employe, whose possession was with the owner's consent but who was violating the latter's express instruction not to permit another than himself to operate or ride in it.

■ Defendant challenges the verdict as so excessive as to indicate the exercise of prejudice and passion rather than judgment. It is generous, possibly to the limit. It was so considered below, but we cannot find in the record such indications of a plainly excessive allowance as will enable us to say that on this point the

trial judge abused his discretion in not ordering a new trial or conditionally reducing the verdict.

Plaintiff is a journeyman carpenter. At the time of the accident he was 47 years old, physically sound, and had always enjoyed good health. The medical testimony presents an irreconcilable conflict of conclusion which is becoming too characteristic. The lay notion of the susceptibility of the knee joint to disabling and baffling injury is corroborated by some of the evidence. According to one of the doctors, "it is the largest joint of the body and is one of the weakest." Plaintiff was not hospitalized. He was in bed for but two days. After that he was "up and around" every day, but on crutches for three months, and got around only with the aid of a cane for some time afterwards. He had much pain. There is evidence that he suffered multiple "chip fractures" of some bones. A tearing of the periosteum is indicated, together with a similar injury and derangement of the ligamentous and tendinous structure in and around the right knee joint. Marked pain continued at the time of the trial. There remained also a swelling of both knees, at least after much use of the legs. One doctor was of the opinion that plaintiff's then "disability is in all probability permanent." He said that "the painful discomfort and conditions in those knees" would continue "due to the present derangement of the ligaments." He thought that plaintiff would never again be able to perform the more onerous leg work of his trade, such as climbing ladders, walking on scaffolds, and the like. Extensive use of his legs, particularly the right, would, in the doctor's opinion, continue to "develop pain, discomfort, and require that he get off his feet," and that the condition would be permanent.

For plaintiff it is said in the brief that the plaintiff's special damages run from $1,250 to $1,500. The failure to document that assertion by folio reference to the record is a violation of our rules, and thereby weakens plaintiff's case on this point. See Rule VIII(3)(c) [200 Minn. xxviii]. But it is apparent that plaintiff's special damages are considerable, because for many months he was unable to work at all, thereby losing the top wages of his trade, $1.10 per hour. The verdict is so large that it is with some mis-

giving that we sustain it. But that reluctance is so outweighed by our respect for the jury function in such cases that we must decline to order a new trial on the question of damages, or even to award one conditionally upon plaintiff's refusal to accept a reduction. The circumstances we have mentioned are such as to prevent us from substituting our impressions on the issue of damages for the judgment of the jury.

We do not overlook the assignments of error so far as they are not covered by what we have already said. They present no prejudicial error.

Order affirmed.

