### FRANCES AND ANTHONY BALLMAN v. CHARLES BRINKER.[1]

December 5, 1941.

Nos. 32,954, 32,955.

[1]Reported in 1 N. W. (2d) 365.

*Olsen & Hopp* and *Moonan & Moonan,* for appellants.
*Harold J. Carroll,* for respondent.

HILTON, JUSTICE.

While driving her husband's car across an intersection in the city of St. Peter, plaintiff Frances Ballman was struck by a truck belonging to defendant and driven by Roy Lipscy. After verdict, the trial judge ordered judgment notwithstanding upon the ground that there was no evidence to justify the jury in finding that Lipscy was driving the truck at the time of the accident with defendant's consent, express or implied, so as to charge him under the Minnesota safety responsibility act. Mason St. 1940 Supp. § 2720-104. Upon this appeal from the judgment we need only consider the propriety of that order.

Under § 2720-104, whenever any motor vehicle is operated upon the highways by one other than the owner with the owner's consent, express or implied, the operator "shall in case of accident, be deemed the agent of the owner." Wherever the owner's consent stands at the beginning of a chain of events which in combination result in injury to the plaintiff, the owner of the vehicle must now suffer the financial consequences of having the operator deemed to be his agent at the time of the accident. However, the principle of liability which the statute embodies by letter and spirit goes beyond the confines of the law of agency. The rule of *respondeat superior* was simply the channel selected by the legislature through which the vicarious liability of the owner might

flow. Judicial inquiry in these cases goes solely to the presence or absence of consent by the owner to the use of his vehicle.

█ The burden of proving the presence of consent rested with the plaintiff as one of the elements of her cause of action. Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101. In discharge of this burden, we have recently said that proof of ownership makes a *prima facie* case for plaintiff upon the issue of consent. Schultz v. Swift & Co. 210 Minn. 533, 299 N. W. 7. Since the operation of a motor vehicle without the owner's consent is a felony by law (Mason St. 1940 Supp. § 2717-1), it is reasonable to infer that the possession by the operator of a motor vehicle belonging to the defendant is with his consent. St. Andrassy v. Mooney, 262 N. Y. 368, 186 N. E. 867. Although the courts do not agree on the label to be used in describing the implication of consent which arises from proof of ownership, City of St. Joseph v. Grantham Motor Sales, 269 Mich. 260, 257 N. W. 701 (presumption); Heavilin v. Wendell, 214 Iowa, 844, 848, 241 N. W. 654, 83 A. L. R. 872 (inference); Rosenberg v. Murray, 75 App. D. C. 67, 116 F. (2d) 552 (*prima facie* evidence of consent), the courts do agree that whatever the implication may be called, it can be overcome by opposing evidence. It is the defendant's contention here, and it was the trial judge's decision, that everything in the evidence negatives the presence of the requisite consent by the defendant to Lipscy's use of the vehicle.

Fairly summarized, we think the evidence establishes the following facts: Defendant, as owner of a small hatchery, owned a truck which was used in the business. Employed by him were three employes, including O'Hara, who had possession of the keys to the truck whenever defendant was away. It also appears that on those occasions O'Hara was the one "who was directing the work," and that on the day of the accident O'Hara "was taking care of the place." Lipscy had, according to his testimony, driven the truck with the defendant's permission "possibly ten or a dozen times" during the 45 days prior to the accident. Defendant admitted that Lipscy had used the truck "possibly a half a

dozen times," but only under his directions, and then not in the status of employe, but as errand boy.

Upon the occasion in question, Lipscy arrived at the hatchery in the afternoon and noticed that the truck was loaded with refuse. He asked O'Hara about it and was informed that the truck was waiting to be driven to the junk yard for unloading. Thereupon, Lipscy asked O'Hara "if I took it down and unloaded it if I could use it for a few moments" because he "wanted to see a guy and get some feed from a man." O'Hara gave him the keys, saying, "Go ahead." After unloading the truck at the dump, Lipscy was driving in a direction away from the hatchery en route to see a friend when he negligently collided with the plaintiff. Lipscy's version of the conversation was directly contradicted by O'Hara, who said that Lipscy was allowed the use of the truck only if he brought it right back from the dump yard, and he is indirectly contradicted by the testimony of both O'Hara and defendant that the truck "was to be used only [for] business purposes." Further, O'Hara is reported to have told Anthony Ballman that Lipscy "had permission to use the truck," although O'Hara insists that he had simply said that Lipscy had permission to take the truck to the dump. O'Hara flatly denied Lipscy's testimony that he had used the truck "about once or twice before." Before leaving the hatchery that day, defendant instructed O'Hara that "someone was to take the truck and take the refuse away" "to the dump." Upon being asked by counsel whom he meant by "someone," defendant specified his three employes. In response to certain leading questions, defendant denied that he had given authority to Lipscy upon this occasion, or that he ever gave authority to anyone to use his truck except under his express directions.

■ Where, as here, an intermediary comes between the consent of the owner and the use by the operator of a motor vehicle, the problems presented by the application of the financial responsibility acts are multiplied. The problem in this situation has been said to turn upon whether the intermediary had "authority to

loan the car [to the operator], so that when the accident occurred it was being driven with defendant's 'implied consent or knowledge.' " Kerns v. Lewis, 249 Mich. 27, 28, 227 N. W. 727. In accordance with that view, where the consent to the use of a motor vehicle came not from the owner but from an entirely unauthorized source, the owner's consent to the operation of the vehicle is lacking and liability does not attach. Selander v. Fulton, 195 Minn. 310, 262 N. W. 874; Owen v. Gruntz, 216 App. Div. 19, 214 N. Y. S. 543; Stapleton v. Hertz Drivurself Stations, Inc. 131 Misc. 52, 225 N. Y. S. 661. Whether the intermediary was possessed of authority to transfer the use of a vehicle to another is in many cases a difficult question. And whether an owner who entrusts possession of his motor vehicle to another under instructions which he knows or has reason to know will be violated can nevertheless claim that he did not consent to the proscribed use we need not here decide. We need only consider the case as it was considered below, where it went to the jury upon the question of O'Hara's authority to permit Lipscy to use the truck.

These facts could have been considered by the jury in reaching its conclusion that O'Hara was authorized to allow Lipscy the use of defendant's truck. Whenever defendant went away O'Hara was entrusted with the keys to the truck and in general was charged with the responsibility of promoting the defendant's interests in respect to the management of the hatchery during his absence. While O'Hara was not shown to have any direct authority to hire or employ anyone, judging from the number of occasions on which Lipscy had driven the defendant's truck with his permission, it would appear that Lipscy was making himself very much available to the business for the performance of errands. O'Hara certainly was familiar with the fact that defendant had availed himself of Lipscy's services upon previous occasions. So when defendant left town, leaving behind instructions that "someone was to take the truck" to the dump yard, it appears to us, as it did to the jury, that defendant in fact authorized O'Hara to utilize the services of anyone, including Lipscy, who was accustomed to per-

form services for defendant. The fact that defendant, as he said on the stand, had only O'Hara and the other two employes in mind is of no compelling consequence. Authority is to be determined not by reference to the principal's mental reservations, but by reference to his manifestations. Restatement, Agency, § 26; 1 Dunnell, Supp. § 149.

The more troublesome aspect of this case arises in determining whether defendant consented to the use by Lipscy at the time and place of the accident. Krahmer v. Voss, 201 Minn. 272, 276 N. W. 218; Ranthum v. Sterling Motor Co. 202 Minn. 209, 277 N. W. 547.

The jury, of course, was entitled to believe Lipscy's testimony that O'Hara had permitted him to use the truck upon prior occasions and that upon this occasion he had received O'Hara's permission to make the detour before he returned to the hatchery. True, there was no showing that defendant knew that O'Hara had permitted Lipscy to use the truck upon previous occasions. Whether he had reason to know this we do not know. Nevertheless, O'Hara knew that defendant had made an abundant use of Lipscy's services. Nothing in the record indicates whether Lipscy was in any way compensated for his services, or, if not, that O'Hara knew that he was not to be compensated. But it does fairly appear from the record that O'Hara was the one to whom the owner entrusted the care of his business when he was away, and the one who received all instructions, both as to work and the use of the truck. Considering O'Hara's general authority in the management of the business during defendant's absence and defendant's specific instruction to have someone unload the truck at the dump yard, was O'Hara authorized to enlist the services of Lipscy to perform this service for the defendant and, as compensation or reward, permit him to make a short side trip for a personal purpose? This is not a case of a servant entrusting an instrumentality belonging to the employer to another exclusively for the other's personal benefit. It is rather a case of an employe who, in discharging a duty, entrusts his employer's motor vehicle to one who has previously performed like services and as a reward authorizes

the other to make a slight deviation in its use to accomplish a personal purpose. As we have indicated, O'Hara's utilization of Lipscy to perform the job of unloading the truck at the dump for defendant was authorized. Could O'Hara reasonably conclude that his authority included a right to reward Lipscy in the way he did for his efforts? O'Hara was left in charge of defendant's business and had control over his vehicle. Lipscy had made himself available for the performance of errands, and he had been used often by defendant and once or twice by O'Hara. O'Hara is not shown to have known whether Lipscy was paid by defendant. We think that in view of all these circumstances the jury could conclude that O'Hara could reasonably think that if Lipscy was acceptable to defendant for the performance of services beneficial to him, he should be rewarded and that the price asked by Lipscy was not so unreasonable as to require O'Hara to conclude that the defendant would not consent to Lipscy's use of the vehicle under these circumstances. O'Hara exercised his authority in furtherance of the defendant's interests, and if he made a good faith mistake as to the scope of his authority, the defendant should not be relieved from the consequences. Restatement, Agency, §§ 35, 215, comment *b*; Kerns v. Lewis, 249 Mich. 27, 227 N. W. 727; Lidtka v. Wagner, 253 Mich. 379, 235 N. W. 189. We think the scope of O'Hara's authority was for the jury.

Judgments reversed.