# CLARENCE EICHER v. UNIVERSAL UNDERWRITERS AND OTHERS.
## MOTOR VEHICLE CASUALTY COMPANY AND ANOTHER, APPELLANTS.

83 N. W. (2d) 895.

May 31, 1957—No. 37,044.

8

*Robb, Robb & Van Eps,* for appellants.
*Brenner & Schnell,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action for declaratory judgment determining the respective liabilities of Motor Vehicle Casualty Company, hereafter referred to as Motor

Casualty, and Universal Underwriters, hereafter referred to as Universal, in certain actions instituted against plaintiff and his employer, Morten Arneson, by Oscar Carlson and Ronald Carlson, a minor, for damages arising out of an automobile accident occurring June 20, 1953, and arising out of the use of a pickup truck then owned by Arneson and driven by plaintiff.

On that date there was in effect an automobile liability insurance policy issued by Motor Casualty to Arneson, which insured him against liability on account of bodily injuries, death, and property damages arising out of the ownership, maintenance, or use of the truck, and which obligated Motor Casualty to defend any actions instituted against the insured therefor. It contained these further provisions:

"The unqualified word 'insured' wherever used in coverages * * * includes the named insured and * * * any person while using the automobile * * * with the permission of the named insured for the purpose or purposes and during the time for which said permission is given;"

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *."

Also in effect on the date of the accident was an automobile liability insurance policy issued to plaintiff by Universal covering an automobile owned by plaintiff but not involved in the accident. Thereunder, Universal agreed to pay all sums the insured might become obligated to pay as damages because of bodily injury, death, or property destruction caused by accident arising out of the ownership or use of such automobile, and to defend any lawsuits against him involving such claims. This policy extended the definition of automobile as used therein to include:

"* * * an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

It also provided that:

"* * * If the insured has other insurance against a loss covered by this policy the company shall not be liable * * * for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles * * * shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

After commencement of the actions against plaintiff, he tendered the defenses thereof to his insurer—Universal—which refused to defend them and disclaimed liability under its policy. Plaintiff thereupon tendered defense of the actions to Motor Casualty which likewise refused to defend them and disclaimed liability under its policy. In consequence, plaintiff employed other counsel who interposed a defense on his behalf in such actions.

In the present proceedings, Motor Casualty answered, denying liability on the ground (1) that at the time of the accident plaintiff was not operating the truck within the course and scope of his employment or of any permission given him by its owner; and (2) that in any event its liability was limited to a secondary or excess obligation to indemnify plaintiff and Arneson for any obligations of theirs over and above the limits of the policy issued plaintiff by Universal. The latter company answered and admitted plaintiff's allegation that he was operating the truck with the permission of its owner at the time of the accident, and demanded judgment that the insurance coverage in its policy be determined to be limited to plaintiff's excess liability over the coverage afforded by Motor Casualty.

After a trial on the merits, the court determined that at the time of the accident plaintiff was driving the truck within the purpose of and during the time authorized therefor by the express permission granted him by Arneson and that Motor Casualty was therefore liable to defend the actions arising out of the accident and to indemnify up to the maximum limit of its policy the obligations of plaintiff and Arneson for damages arising therefrom; and that under its policy Universal was liable to plaintiff for any obligation of his therein in excess of the maximum

limit of the policy of Motor Casualty, and was obligated to defend the actions against him with respect to claims within the scope of its liability as above determined.

Subsequent to this determination, the actions against plaintiff and Arneson were settled and their legal expenses therein paid from a fund created by both insurance companies without prejudice to their rights in the present proceedings, and thereafter Motor Casualty moved for amended findings in its favor or for a new trial. This is an appeal from an order denying such motion.

On appeal Motor Casualty asserts (1) that the evidence compels a finding that plaintiff's use of the truck was not within the scope of the permission granted by Arneson; and (2) that in any event Motor Casualty was obligated only to indemnify plaintiff and Arneson for their liability in excess of the maximum limits of Universal's policy, or at the most that its liability was proportionate to the ratio of the maximum limits of liability under its policy to the total of the maximum coverage afforded by the two policies; and that its liability for the expenses involved in defending the action should be likewise thus apportioned.

With reference to plaintiff's permission to use the truck, the facts are as follows: Plaintiff was employed by Arneson in his nursery at 4951 Excelsior Boulevard, in Hennepin County. He lived at St. Michael 35 miles away and drove his automobile on Highway No. 152 to and from work each day. Shortly prior to June 20, 1953, his automobile had become disabled, and 'Arneson had given him permission to use the truck in going to and from work each day until his car was repaired. Plaintiff's work began at 7:30 a. m. and ended at 5 p. m. each day, but there is no evidence of any limitation on the time during which he was to use the truck in coming to and from work.

The accident took place at 4:30 a. m. June 20, 1953. On the preceding evening plaintiff had driven the truck from work to his home in St. Michael and parked it there while he ate his dinner. Thereafter, he drove it to Albertville, where he spent several hours in drinking and playing cards. Later that same evening, he returned to St. Michael, where he continued drinking and playing cards until just prior to 1 a. m. June 20. He then provided himself with some containers of beer and

took them with him to the truck. He drove it around for some time and eventually reached Highway No. 152 and commenced driving thereon to his place of employment, intending to get there early so that he could sleep a few hours in the truck before starting work. At about 4:30 a. m., while thus traveling, the accident, which gave rise to the Carlson actions, occurred.

It is conceded by Motor Casualty that at the time of the accident plaintiff was driving on Highway No. 152 on his way to his employment at 4951 Excelsior Boulevard. If the accident had not occurred, plaintiff would have arrived there about 5:30 a. m., although normally he did not arrive until about 7:30 a. m. each day.

■ Under the Safety Responsibility Act, M. S. A. 170.54, proof that a party was the owner of an automobile involved in an accident on a public highway, and that at the time its operator was the employee of such owner, establishes prima facie that the owner had consented to the driver's operation of the car. Truman v. United Products Corp. 217 Minn. 155, 14 N. W. (2d) 120; Ballman v. Brinker, 211 Minn. 322, 1 N. W. (2d) 365. This may not always be overcome by the uncontradicted testimony of the owner that his consent had not been given therefor. Schultz v. Swift & Co. 210 Minn. 533, 299 N. W. 7. If other evidence makes the issue inconclusive, or if different inferences may be drawn therefrom, or if the credibility of such testimony may be in question, the issue is for the finders of fact. Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744. Further, where an owner's consent to the use of a vehicle is of a limited and restricted nature, and the bounds of such consent have been exceeded at the time and place of the accident, the owner is relieved of liability therefor. Truman v. United Products Corp. 217 Minn. 155, 14 N. W. (2d) 120; Patterson-Stocking, Inc. v. Dunn Bros. 201 Minn. 308, 276 N. W. 737.

■ Here, it seems clear that at the time of the accident plaintiff was not exceeding the limits of Arneson's consent that he might drive the truck to and from his work. It is undisputed that Arneson had authorized him to do this until his own car was repaired and that his car had not been repaired up to that time; that the highway on which he was driving was the route to his work and that he was traveling toward his work when the accident occurred; and that, had the trip not been

interrupted by the accident, its destination would have been the place of his employment, although his arrival there would have been somewhat earlier than necessary. With respect to the latter aspect of the case, there was no restriction in Arneson's consent as to the hours of the day during which he might drive the truck in traveling to and from his work, providing of course he commenced and finished his work at the time required. No express restrictions as to time having been specified by Arneson, neither the trial court nor this court should find such a restriction by implication. Anderson v. Standard Oil Co. 204 Minn. 337, 283 N. W. 571; Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790.

■ In this respect, the situation differs from that in Truman v. United Products Corp. 217 Minn. 155, 14 N. W. (2d) 120, where the evidence disclosed not only that by delaying his trip home for 8 hours in pursuit of his own affairs the driver had violated the owner's specific instruction "not to loiter" in using the truck to drive home after work, but in addition that at the time of the accident he was actually traveling in a direction opposite to that which would have taken him to his home. Likewise, in Gudbrandsen v. Pelto, 205 Minn. 607, 287 N. W. 116; Abbey v. Northern States Power Co. 199 Minn. 41, 271 N. W. 122; Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101; Krahmer v. Voss, 201 Minn. 272, 276 N. W. 218; Ranthum v. Sterling Motor Co. 202 Minn. 209, 277 N. W. 547; Kayser v. Jungbauer, 217 Minn. 140, 14 N. W. (2d) 337; Liberty Mutual Ins. Co. v. Stilson (D. Minn.) 34 F. Supp. 885, the decisions hinged on evidence from which the conclusion was inescapable that the drivers involved were operating the owners' cars beyond the scope of the latters' express or implied consents or authorizations.

Since the evidence is clear in the instant case that, at the time of the accident, plaintiff was not driving the truck in violation of any of the conditions under which he was permitted to use it, it would follow that under § 170.54 Arneson became liable for the consequences of the accident described and, by the same token, under the consent clause of his policy as above set forth Motor Casualty's liability for the obligations of both plaintiff and Arneson arising out of the accident became fixed.

■ The question of division of responsibility between the two in-

surers is dependent upon a determination as to which policy should be regarded as affording primary coverage of the liability arising out of the accident and which secondary or excess protection. Motor Casualty's policy covers liability arising out of the use of the truck insofar as it affects the owner thereof. As an additional feature, its coverage is extended to include an agent of the owner operating the truck within the scope of his authority at the time of an accident. If such an agent has other insurance against any liability covered by Motor Casualty's policy, however, the latter's obligation is limited to payment of that proportion of the total liability which the maximum limits of its policy bears to the total of the maximum of both policies.

On the other hand, the policy issued by Universal covers liability arising out of the use of an automobile not involved in the accident insofar as such liability affects plaintiff as owner of this car. As an additional feature, protection thereunder is extended to cover plaintiff while he may be driving a substitute car because of the breakdown, repair, servicing, or loss of his car, but in such cases Universal's obligation is limited to that of indemnifying plaintiff for any liability of his in excess of the maximum limits of other insurance applicable with respect to the substitute automobile which here would be the policy of Motor Casualty covering the truck.

It would seem that a fair construction of these provisions requires a determination that plaintiff and Arneson be indemnified by Motor Casualty up to the maximum limit of its policy for their liability arising out of the accident, since plaintiff's policy with Universal is not "against a loss covered by this [Motor Casualty's] policy" but only against his liability, if any, in excess of the limits thereof, and accordingly its pro rata provision is inapplicable; and that after Motor Casualty has indemnified plaintiff for his liability up to the limits of its policy, Universal indemnify him for any liability of his in excess thereof up to the limits of its policy. This construction does not appear to do violence to the terms of the policies and appears to be practical and convenient of application where situations of this kind are presented. Like conclusions have been reached in a number of jurisdictions. McFarland v. Chicago Express, Inc. (7 Cir.) 200 F. (2d) 5; Speier v. Ayling, 158 Pa. Super. 404, 45 A. (2d) 385.

■ Both policies contain provisions obligating the insurers therein to defend any suits for injuries or damages covered by the liability provisions of such policies even if such suits are groundless, false, or fraudulent. As indicated above, each policy defines its "insured" as including both the named insured and any person using the automobile described in the policy with the permission of such named insured. Accordingly, Eicher is within the definition of insured under both policies. Under Universal's he is the named insured, and, since it was determined that he was driving with Arneson's consent, he is likewise the insured under the policy of Motor Casualty.

It would follow that, if the complaints in the original actions claimed damages in excess of the maximum limits of Motor Casualty's policy, both insurers were obligated to defend them—Motor Casualty for Arneson and Eicher and Universal for Eicher alone. On the other hand, if the complaints sought damages for less than the maximum limits of Motor Casualty's policy, Universal would not be obligated to defend the actions, since Eicher was driving with Arneson's permission at the time of the accident, and the liability therefor did not extend to the excess coverage provisions of Universal's policy.

In the first situation described, where the insurers would each be obligated to defend the actions, they would be equally liable for all expenses in connection therewith. In the second situation, where no obligation would rest upon Universal to defend the actions, the expenses incurred in connection therewith would fall upon Motor Casualty alone.

The order appealed from is affirmed in part and reversed in part.