**NATIONAL INDEMNITY COMPANY,**
Plaintiff,

v.

**LEAD SUPPLIES, INC.,** a Minnesota corporation, **Melvin J. Ryan,** individually, and d/b/a **Harold Carter Co., Richie Scott Olson, Casualty Underwriters, Inc.,** and **George V. Thomas,** and **Travelers Indemnity Co.,** a corporation, Defendants.

**No. 4–58 Civil 339.**

United States District Court
D. Minnesota,
Fourth Division.
Aug. 26, 1960.

Frank X. Cronan, of Carroll, Thorson, Anderson & Cronan, Minneapolis, Minn., for Casualty Underwriters, Inc.

Walter E. Riordan, H. S. Wippman, and Hagerty & Hanson, Minneapolis, Minn., appeared for George V. Thomas.

Thomas J. Spence and Benjamin M. Kail, St. Paul, Minn., appeared for Travelers Indemnity Company.

In a memorandum decision dated April 20, 1960 this Court determined that an insurance policy issued by Casualty Underwriters, Inc., an insurance company hereinafter referred to as Casualty, naming Lead Supplies, Inc., as an insured, covered a certain tractor-trailer vehicular unit operated by Richie Olson and involved in a highway accident on June 3, 1958, in which George V. Thomas sustained personal injuries. Also determined was that an insurance policy issued by the Travelers Indemnity Company, an insurance company hereinafter referred to as Travelers, covered that same vehicle which Melvin J. Ryan, a named insured therein, had leased to Lead Supplies. Although the Court referred to Casualty's coverage as "excess insurance", it did not assume, in its memorandum decision, to determine the liabilities as between the two insurance companies on their respective policies. This Court now has been advised that Thomas has obtained a judgment, yet unpaid, against Olson, Ryan and Lead Supplies, defendants herein, in a Minnesota state court, and Travelers and Casualty, the two insurance carriers presently left in this case, now request that the liabilities between them arising out of the Thomas accident be determined.

Irvin E. Schermer, of Schermer, Gensler & Shields, Minneapolis, Minn., for plaintiff.

Joseph L. Bard, Minneapolis, Minn., appeared for Lead Supplies, Inc.

William L. Devitt, of Allen & Courtney, St. Paul, Minn., for Melvin J. Ryan.

Charles T. Hvass, of Hvass, Weisman & King, Minneapolis, Minn., for Richie Scott Olson.

NORDBYE, District Judge.

Travelers argues that the so-called "primary tortfeasor" rule is applicable. Under that rule, the party whose active misconduct or other fault directly caused the accident and the resulting injuries should be held liable for the entire loss; thus one whose liability is merely passive and imposed solely by law is not obligated to contribute. See Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 1953, 201 F.2d 408, 37 A.L.R.2d 1399; Lunderberg v. Bierman, 1954, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R.2d 865. The heart of Travelers' argument is that Olson, the driver of the vehicle, was employed by and acting on behalf of Lead Supplies, the *named* insured under the Casualty policy.

But even if it made any difference whether one policy applies because of the legal responsibility of a named insured as opposed to that of an additional insured, it should be observed that Olson was an additional insured under both insurance policies, Casualty's as well as Travelers. Lead Supplies' liability to Thomas, because of which Casualty may also be held responsible, is a product of the operation of law, namely the doctrine of *respondeat superior*. In that regard, Lead Supplies' position is not unlike Ryan's who is liable to Thomas by virtue of the operation of a state Motorists Financial Responsibility Law. Olson, so far as he comes within the policy issued by Casualty and Travelers, does so only as an additional unnamed insured. And in passing it may be noted that Lead Supplies likewise would be an additional unnamed insured under Trav-

elers' policy. But however the above may be, the primary tortfeasor is of no assistance as to the issues now before the Court in that both insurance companies stand in the shoes of the active wrongdoer, Olson, the so-called "primary" tortfeasor. For this purpose, the insurance companies, in effect, are in *pari delicto*; neither has greater equities than the other.

■ This case necessarily is directed by Minnesota law. Travelers urges Commercial Casualty Ins. Co. v. Hartford Accident & Indemnity Co., 1934, 190 Minn. 528, 252 N.W. 434, modified on rehearing 1934, 190 Minn. 532, 253 N.W. 888; Board of Trade Livery Co. v. Georgia Casualty Co., 1924, 160 Minn. 490, 200 N.W. 633, 40 A.L.R. 678; Gamble-Skogmo, Inc. v. St. Paul Mercury Indemnity Co., 1954, 242 Minn. 91, 64 N.W.2d 380. But these cases have no relevance here. It is true that in Commercial Casualty Ins. Co. v. Hartford Accident & Indemnity Co., supra, the Court made use of the words "primary" and "secondary" in interpreting the "other insurance" provisions of the policies involved, but such use was not in reference to the type of tortfeasor the named insureds may have been, but was a reference to the kind of insurance that had been written and the respective rights of the insurers under the "other insurance" provisions. The holding of this case was not predicated upon the primary tortfeasor rule. There are, however, two recent Minnesota cases which bear directly upon the issues involved herein. In Eicher v. Universal Underwriters, 1957, 250 Minn. 7, 83 N.W. 2d 895, Motor Vehicle Casualty Co. issued its policy to one Arneson, who permitted his automobile to be used by one Eicher, the primary and active tortfeasor in the accident involved and the named insured under an insurance policy issued by Universal Underwriters. Eicher, in negligently driving Arneson's automobile, had caused one Carlson to sustain personal injuries. Arneson, like Ryan here, was liable to Carlson under a state Motorists Financial Responsibility Act. Both insurers covered Eicher's use of the automobile. The holding that Motor Vehicle Casualty Co. was obligated to pay the full amount of the Carlson judgment was based, not upon the primary tortfeasor doctrine, but ·upon the terms of the insurance policies so far as they related to multiple or "other" insurance situations. This theory was expressly upheld in Woodrich Construction Company v. Indemnity Ins. Co. of North America, 1958, 252 Minn. 86, 89 N.W.2d 412. There, Zaske owned a truck and operated it on behalf of Baker, a subcontractor of Woodrich Construction Company. Zaske, while driving the truck, was caused, by the negligence of Woodrich, to injure Crawford. Zaske, Baker, and Woodrich each had insurance protection in separate companies against liability arising from the use of motor vehicles and Woodrich further had a general contractor's liability policy issued by still another insurance company. After determining that Woodrich was an insured under each of the four policies and that the accident was the type of risk assumed by each insurer, the court held that all four insurers were concurrently liable. The "primary tortfeasor" rule was expressly disavowed and rejected as being arbitrary and without any relation to the contractual rights of the parties. Liability against each insurance company was predicated upon an analysis and interpretation of the insurance policies. In accord with the views expressed by the Minnesota Supreme Court is Lamb-Weston, Inc. v. Oregon Automobile Ins. Co., 1959, 219 Or. 110, 341 P.2d 110, modified on rehearing 1959, 219 Or. 110, 346 P.2d 643. An examination of the agreements which Travelers and Casualty made with their insureds affords the only rational solution of the problem as to their respective liabilities under their policies.

■■ Both insurance policies herein involved contain certain "other insurance" provisions which attempt to fix liability between competing insurers in

overlapping coverage situations. The applicable "hired automobiles" endorsement in the policy issued by Casualty to Lead Supplies contains an "excess insurance" clause which provides: "[t]his insurance shall be excess insurance over any other valid and collectible insurance for Bodily Injury Liability * * *." Such clauses in insurance policies are attempts by insurers to disclaim liability until other insurance covering certain insureds has been exhausted. In that neither Olson nor Lead Supplies was engaged in the trucking business, the "other insurance" provision in the "truckmen" endorsement of the Travelers policy is inapplicable. The pertinent "other insurance" clause is to be found in the main body of the Travelers policy. It is a typical "pro rata" clause, which provides,

> "(i)f the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss * * *."

Such provisions are inserted in insurance policies to resolve the problem of multiple insurers having issued concurrent, overlapping coverage so as to bring about a proportionate contribution by each insurer based upon the relative limits of the insurance policies involved. Another form of "other insurance" provision—not present here—is the so-called escape clause whereby an insurer disclaims any and all liability if its insured has any amount of "other insurance" even if the insured should have to pay a part of the loss sustained due to the exhaustion of the other insurance.

Actually, the question presented here as to the interpretation to be accorded to Casualty's "excess" insurance clause and Travelers' "pro rata" clause may be stated as follows: Did Olson and Lead Supplies have any *other insurance*

covering the loss to Thomas as that term is defined in the policy issued by Travelers? The latter contends that they did, and argues that the two applicable "other insurance" clauses are mutually repugnant to each other and should be disregarded. Thus it argues that the "excess" clause in the Casualty policy should not operate to deny coverage concurrent with Travelers according to its terms and that the two insurers should contribute on a pro rata basis towards payment of the Thomas judgment. On this issue, the Minnesota case which is controlling is Eicher v. Universal Underwriters, supra. There, the "pro rata" clause conflicted with an "excess" other insurance clause in the two insurance policies whose coverage overlapped. It was there held that the insurer which had agreed to provide coverage on a pro rata basis was to contribute towards the claim until the policy limits had been reached before the insurer providing the "excess" coverage needed to contribute. The court said (250 Minn. at page 14, 83 N.W.2d at page 900):

> "This construction does not appear to do violence to the terms of the policies and appears to be practical and convenient of application where situations of this kind are presented. Like conclusions have been reached in a number of jurisdictions. McFarland v. Chicago Express, Inc., 7 Cir., 200 F.2d 5; Speier v. Ayling, 158 Pa.Super. 404, 45 A.2d 385."

Travelers apparently concedes that such a determination as the above is in accord with the majority rule. See Citizens Mutual Automobile Ins. Co. v. Liberty Mutual Ins. Co., 6 Cir., 1959, 273 F.2d 189 and the multitude of cases cited therein; American Surety Co. of New York v. Canal Ins. Co., 258 F.2d 934 (4 Cir., 1958); American Automobile Ins. Co. v. Republic Indemnity Co., supra; Note, "Automobile Liability Insurance— Effect of Double Coverage and 'Other Insurance' Clauses," 38 Minn.L.Rev. 838, 852 (1954). In 8 Appleman, Insurance

Law & Practice, Section 4914, p. 333, appears the following, which reflects the majority view,

"It has been held that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted."

Travelers cites and quotes from several cases, some of which are not in point, they being concerned, not with conflicts between an "excess" and a "pro rata" clause in policies issued by insurers with overlapping coverage, but between multiple "pro rata" clauses (Bituminous Casualty Co. v. Travelers Ins. Co., D.C. D.Minn.1954, 122 F.Supp. 197; Beattie v. American Automobile Ins. Co., 1959, 338 Mass. 526, 156 N.E.2d 49; Woodrich Construction Co. v. Indemnity Ins. Co. of North America, supra) between multiple "excess" clauses (Reetz v. Werch, 1959, 8 Wis.2d 388, 98 N.W.2d 924), or between an "excess" clause and an "escape" clause (Oregon Automobile Ins. Co. v. United States Fidelity & Guar. Co., 9 Cir., 1952, 195 F.2d 958; Commercial Casualty Ins. Co. v. Hartford Accident & Indemnity Co., 1934, 190 Minn. 528, 252 N.W. 434, modified on rehearing, 1934, 190 Minn.

532, 253 N.W. 888). See also Continental Casualty Co. v. Weekes, Fla.1954, 74 So. 2d 367, 46 A.L.R.2d 1159; Grasberger v. Liebert & Obert, Inc., 1939, 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201.

Different factors and principles are involved in those situations. Policies containing only "pro rata" clauses are in harmony and consonant with each other in that each asserts, if multiple overlapping coverage exists, the same mathematical computation for resolving the concurrent insurance problem. And if multiple "excess" clauses conflict or, as in the much-quoted case of Oregon Automobile Ins. Co. v. United States Fidelity & Guar. Co., supra, where an "excess" clause conflicted with an "escape" clause, each insurer purported to disclaim responsibility if other coverage was available. If such policies are to be construed and applied according to their terms, an intolerable situation would be created. "Escape" and "excess" provisions are indeed mutually repugnant to each other for a resolution of the problem thereunder depends upon which policy is read first. As the court in Reetz v. Werch, supra, has observed, "(a)ny attempt to give effect to both clauses puts one on a perpetual mental merry-go-round." 98 N.W.2d at page 926.

Only one jurisdiction has been located by Travelers that adopts its position that, in concurring overlapping coverage situations involving conflicting "excess" and "pro rata" clauses, the insurers should be held liable on a prorata basis. See Continental Casualty Co. v. General Accident Fire & Life Assurance Corp., D.C. D.Or.1959, 175 F.Supp. 713, modified on rehearing, D.C.D.Or.1960, 179 F.Supp. 535; Lamb-Weston, Inc. v. Oregon Automobile Ins. Co., 1959, 219 Or. 110, 341 P.2d 110, modified on rehearing, 1959, 219 Or. 110, 346 P.2d 643. It may be observed that the Oregon Supreme Court, like Travelers here, read Beattie v. American Automobile Ins. Co., supra, heavily relied on, as concerning a conflict between "excess" and "pro rata" other insurance clauses. That was not the case.

It follows from the teachings of the Eicher case, which adheres to the better rule, that the coverage extended by Casualty under its policy is not "other insurance" within the meaning of the Travelers "other insurance" provision. Casualty should not be obligated to contribute towards the Thomas judgment based upon Olson's or Lead Supplies' responsibility therefor until after Travelers has made payment up to the limits of its policy. An insurance company, like any other obligor under a contract, cannot be held responsible for more than it became obligated to perform. Such obligations can only be determined from the insuring agreements. Here, Casualty, like Universal Underwriters in the Eicher case, became obligated to provide, relative to other insurers of the same risk, "excess" insurance only. This Court should not undertake to enforce its liability on a prorata basis with any other insurer.

Travelers also raises the question that, in that the terms of the written lease between Ryan and Lead Supplies of the truck involved in the accident provided that insurance, including public liability, was to be carried by Lead Supplies, all liability arising out of the use of the vehicle rests solely upon Lead Supplies or its insurer, Casualty. Travelers argues, therefore, that, in this proceeding, it is entitled to a determination that it should be indemnified by Lead Supplies and/or Casualty in the event Travelers is forced to contribute to the Thomas judgment. Casualty, however, counters with the argument that this Court does not have jurisdiction to decide this issue as such questions are outside the ambit of this lawsuit brought primarily to interpret insurance policies. It would seem that Casualty is clearly sound in maintaining this position. Whether Ryan has any rights against Lead Supplies upon the theory that the latter breached its lease agreement in failing to procure the insurance referred to in the lease, is a matter outside the issues herein and has not been litigated in this Court.

Travelers also asks this Court to determine whether Ryan, the named insured in the Travelers policy, is an insured under the policy issued by Casualty to Lead Supplies. The definition of an insured in the main body of Casualty's policy includes "any person while using the automobile and any person or organization legally responsible for the use thereof." This clause, standing alone, would identify Ryan as an insured. But in that the policy's "hired automobiles" endorsement written specifically to cover the situation where the named insured, Lead Supplies, hired, leased, or rented motor vehicles from another, an insured is stated as anyone defined as an insured in the main body of the policy "except * * * the owner or any lessee, other than the named insured, of the automobile * * *," Ryan, being the owner of the tractor-trailer unit in question, is clearly excluded from coverage as an insured under that endorsement. It seems clear, therefore, that there is no ambiguity in these two definitions of an insured and there is no conflict between such definitions. Under the Casualty policy, the "hired automobiles" endorsement relates to one specific situation—namely the occurrence when the named insured obtains motor vehicles under lease. Agreements relating to a specific circumstance must be distinguished from the primary coverage in Casualty's insurance contract, which purported to cover no more than six personal automobiles. It follows from the foregoing that the Court finds that Ryan is not an insured under Casualty's policy.

The proposed findings of fact to be submitted by plaintiff herein may include findings consistent with the foregoing. Further hearing with respect to proposed findings of fact and conclusions of law herein will be had before this Court on September 12, 1960, at ten o'clock A.M.