**FARM BUREAU MUT. AUTOMOBILE INS. CO. v. PREFERRED ACC. INS. CO. et al.**

Civ. No. 352.

District Court, W. D. Virginia, Roanoke Division.

June 21, 1948.

562

C. Carter Lee, of Rocky Mount, Va., for plaintiff.

Fred B. Gentry, of Roanoake, Va., for defendant, Preferred Acc. Ins. Co.

W. S. Roop, of Christiansburg, Va., for defendant John B. Spiers, administrator, and the infant defendant, Cora Dalton Mabry.

J. B. Allman, of Rocky Mount, Va., for defendant Benjamin Harrison Perdue.

Virgil Goode, of Rocky Mount, Va., for defendants Smith.

BARKSDALE, District Judge.

This action having been tried by the court upon the facts, without a jury, the court doth hereby find the facts specially and states separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows:

### Findings of Fact.

Plaintiff, Farm Bureau Mutual Automobile Insurance Company, is a corporation duly organized and existing under the laws of the State of Ohio, with its principal office in Columbus, Ohio. The defendant, Preferred Accident Insurance Company, is a corporation duly organized and existing under the laws of the State of New York, with its principal office in the City of New York. This defendant has qualified to do business in Virginia, and has designated and appointed the Secretary of the Commonwealth of Virginia as its statutory agent upon whom process might be served. The official residence of the Secretary of the Commonwealth is Richmond in the Eastern District of Virginia. All the other defendants are citizens and residents of Virginia and the Western District thereof, and the accident here in controversy occurred in the Western District of Virginia.

On and prior to June 12, 1947, Roosevelt Smith was the owner of the 1946 Chevrolet Sedan, which was involved in the accident here in controversy. Earl Smith, approximately eighteen years of age, the son of Roosevelt Smith, lived with his father, and was the owner of another automobile which he kept at his father's house. Earl and his father were accustomed to using each other's automobiles practically at will. Without express permission, Earl frequently drove his father's car, and the father frequently drove Earl's car. On the morning of June 11, 1947, Earl and his father drove to Roanoke in Earl's car, and returned to a filling station in Rocky Mount during the afternoon. Roosevelt Smith had previously left his 1946 Chevrolet at this filling station, and when they arrived, Roosevelt and Earl Smith found Roosevelt's 1946 Chevrolet parked there, and that it had been "cleaned up". Whereupon, Earl Smith asked his father if he might use his car, saying that he wanted to "sport around some." His father readily agreed, the idea being that he would continue to use Earl's car, and he did so continue to use it. In granting permission to Earl to use his car, Roosevelt Smith remarked only that he hoped that Earl would come in early. This was not meant as any limitation on Earl's use of the automobile, but was simply the expression of the father's wish that his son would not stay out too late. Actually, no limitation whatever upon Earl's use of the car was stated or intended by Roosevelt Smith. When Roosevelt Smith let Earl have his automobile, it was his intention that the automobile would be the same as if it were Earl's property while he was using it. Roosevelt Smith had no objection to Earl's having some one else drive the car while he had it, and Roosevelt knew that Earl had no driver's permit, as required by Virginia law.

At the time Earl Smith spoke to his father at the filling station about using his car, Benjamin Harrison Perdue was also there, but he took no part in this conversation and Roosevelt Smith drove away in Earl's car without knowing that Perdue was there. However, Perdue was a close friend of both Roosevelt and Earl Smith. Both before and after the accident here in controversy, Perdue had used Roosevelt Smith's truck with his permission, and prior to the accident Roosevelt Smith had driven Perdue's automobile with his permission.

Although at the time Earl borrowed his father's automobile, no one contemplated that Perdue would drive it, Roosevelt Smith had no objection to his driving it and would have lent it to him if he had asked.

Later in the afternoon, by mutual agreement between themselves, Earl Smith and Perdue left the filling station in Rocky Mount, and proceeded to Christiansburg and picked up two girls. The four of them, on pleasure bent, rode around that evening and again the following morning, June 12, 1947. Neither Earl Smith nor Perdue had gone home. During the drive, on June 12th, with the express permission of Earl Smith, Perdue drove the car and wrecked it, killing one girl, and seriously injuring the other one as well as himself. Perdue was hospitalized in Christiansburg for three days, later going home where he was confined to his bed for nearly two weeks. He suffered fractures of two bones in his back, and some injury to his arm.

Prior to June 12, 1947, the defendant, Preferred Accident Insurance Company, had issued to Roosevelt Smith a policy of liability insurance, which was valid and in force at the time of the accident. At the same time, Perdue was the owner of a Pontiac automobile, which was in no way involved in this accident, and the plaintiff, Farm Bureau Mutual Automobile Insurance Company, had issued to him a liability insurance policy covering his Pontiac automobile, which was in force and valid at the time of the accident. Perdue never made a written report of this accident to his insurance company. Smith's insurance company, Preferred Accident, began an investigation immediately, and its representative called on Perdue at the hospital a day or two after the accident. This representative assumed that Perdue's company, Farm Bureau, was not involved, because Perdue's automobile was not involved in the accident and he knew nothing about any coverage of this accident which might be contained in Perdue's policy.

On June 26th, the adjuster of Farm Bureau, Perdue's company, called on Perdue at his home, primarily with reference to a previous accident sustained by Perdue in his Pontiac car. However, this adjuster had previously learned of the accident sustained by Perdue while driving the automobile of Roosevelt Smith, and inquired of Perdue about it. Perdue told him that he was driving Roosevelt Smith's Chevrolet at the time of the accident, and realizing that his company might be involved later, Farm Bureau's adjuster proceeded to investigate. He told Perdue that his company might be involved later, but that he need make no formal report. Farm Bureau's adjuster promptly reported the accident to his home office, full investigation was made, and counsel employed. Farm Bureau was not prejudiced in any way by lack of written notice on the part of Perdue.

Early in August, counsel for Preferred Accident made claim on Farm Bureau to assume liability, and a formal written demand to that effect was made by Preferred's counsel by letter of August 4, 1947. Also, on or about August 15, 1947, Farm Bureau's adjuster took a non-waiver agreement from Perdue.

Both the insurance policies of Farm Bureau and Preferred Accident contain provisions extending the coverage of the policies to "any person while using the automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured." Of course, the Virginia statute in regard to extended coverage also applies, and is as follows: " * * * No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person *legally using or operating the same with the permission, express or implied, of such owner.*" (Italics mine) Sec. 4326a, Code of Virginia 1942.

Also, both policies contain identical provisions which the court is here called upon to apply to the facts of this case, the pertinent portions of which are as follows:

"Such insurance as is afforded by this policy for bodily injury liability * * * with respect to the automobile classified as 'pleasure and business' applies to the named insured * * * with respect to the operation of any other private passenger automobile by such named insured * * *"

(Insuring Agreement VI of Farm Bureau's policy: Insuring Agreement V of Preferred Accident's policy)

"If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, provided, however, the insurance under [the provision quoted above] shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered under either or both of said insuring agreements."

(Condition No. 19 of Farm Bureau's policy: Condition No. 13 of Preferred Accident's policy)

By virtue of the above quoted policy provisions, defendant, Preferred Accident, contends that it and the plaintiff, Farm Bureau, are coinsurers of the liability resulting from the accident, and that each is required to participate equally and ratably in the discharge of any judgments recovered against any one covered by its policy of insurance. Preferred Accident also contends that the use of the Roosevelt Smith automobile at the time of the accident, was not with the consent of the named insured, and that it is therefore not liable at all, and it also contends that this action cannot be maintained in this District. On the other hand, the plaintiff, Farm Bureau, contends that the foregoing policy provisions, as to it, provide only for excess insurance, that is, that it would be liable for the payment of a judgment against its insured, Perdue, only for such amount as such judgment might exceed the limits of the coverage provided in Preferred Accident's policy issued to Roosevelt Smith. Farm Bureau

also contends that it has been discharged from all liability on its policy, by reason of the failure of its insured, Perdue, to give it written notice of the accident as provided in the policy. As the personal representative of the girl who was killed in the accident, and the injured girl, were threatening to sue, Farm Bureau instituted this action for a declaratory judgment adjudicating the controversy which exists between it and Preferred Accident, and has joined as defendants the personal representative of the deceased girl, the injured girl, Roosevelt Smith, the owner of the automobile involved in the accident, Perdue, who was driving this automobile, and Earl Smith, his companion who had borrowed the automobile of his father, Roosevelt Smith.

Conclusions of Law.

■ Upon the facts, as set out above, the court's conclusions of law are as follows:

(1) That a justiciable controversy between the parties exists, that the facts and circumstances present a proper case for a declaratory judgment, that this court has jurisdiction of the parties and the subject matter of the controversy, and that this action was properly instituted· and may be maintained in this District.

■ (2) That plaintiff, Farm Bureau, both expressly and by its conduct, waived written notice of the accident, and therefore the failure of Perdue to give a written notice of the accident to Farm Bureau does not discharge Farm Bureau from any obligations created by its policy of insurance here in controversy.

■ (3) That at the time of the accident, both Perdue and Earl Smith were legally using or operating the 1946 Chevrolet automobile of Roosevelt Smith with the permission, express or implied, of said Roosevelt Smith, its owner, and that therefore both Perdue and Earl Smith were included as "insured" under the provisions of Preferred Accident's policy of insurance issued to Roosevelt Smith, and Section 4326a, Code of Virginia 1942.

■ (4) That the policy of insurance issued by Preferred Accident to Roosevelt Smith, as to any liability which may be established against Perdue by reason of the

565

accident here in controversy, constitutes primary insurance and creates liability upon the said Preferred Accident to discharge any and all liability which may be established against the said Perdue by reason of the accident here in controversy, within the limits of the coverage provided in said policy.

(5) That the policy of insurance issued by Farm Bureau to Benjamin Harrison Perdue, as to any liability which may be established against said Perdue by reason of the accident here in controversy, constitutes secondary, or excess, insurance and creates liability upon said Farm Bureau to the extent, and only to the extent, of paying any amount by which a judgment or judgments recovered against Perdue may exceed the policy limits of the policy of insurance issued by Preferred Accident to Roosevelt Smith.

(6) That plaintiff, Farm Bureau, is entitled to a judgment declaring its rights and obligations, as set out in these conclusions, with costs against the defendant, Preferred Accident.

An order will be entered accordingly.