501 P.2d 706

Lawrence G. VIANI, Plaintiff-Respondent,

v.

AETNA INSURANCE COMPANY, a corporation, et al., Defendants-Appellants.

No. 10714.

Supreme Court of Idaho.

Aug. 3, 1972.

Concurring Opinion Oct. 6, 1972.

Moffatt, Thomas, Barrett & Blanton, Boise, for Aetna Ins. Co.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, for Allstate Ins. Co.

Clemons, Skiles & Green, Boise, for American Casualty Co. of Reading, Pa.

Cosho, Humphrey & Southcombe, Boise, for plaintiff-respondent.

McFADDEN, Justice.

This case arises from a gunshot wound suffered by plaintiff-respondent Lawrence G. Viani due to the negligence of Andrew Bowles, the owner of the pistol. In an earlier, separate action Viani recovered a $14,622 judgment on a jury verdict returned against Bowles. That judgment has become final. Vaini thereafter brought this action against defendants-appellants Aetna Insurance Company (hereinafter "Aetna"), Allstate Insurance Company (hereinafter "Allstate"), and American Casualty Company of Reading, Pennsylvania (hereinafter "American Casualty"), alleging that each was the insurer of Bowles and liable to pay the judgment. Among other points decided by the district court as part of its judgment, the court held each appellant was an insurer of Bowles and was required to pay one-third of the $14,622 judgment and one-third of the costs of defense in that litigation. The three insurance companies appealed, each maintaining a distinct and independent position. Only Aetna has conceded liability, but due to the existence of "other" insurance contends its share of the Viani v. Bowles judgment is too great.

Bowles is a professional architect and had been retained by one Bonny to inspect and oversee the construction by a general contractor of his mountain home located in Pioneerville. Viani, a carpenter, had earlier done some independent contracting work on this project; apparently he was not an employee of Bowles for that work. On August 12, 1966, Bowles asked Viani to accompany him to the cabin site to aid him in finishing a few items which the general contractor had left unfinished. Viani agreed and the two left that day in Viani's pickup truck which was used to haul tools, building materials, and their camping gear. The next day, August 13, the men completed their work and returned to Boise, planning to leave shortly thereafter to inspect some mining property.

Upon returning to Boise, Viani drove to Bowles' home and parked his pickup in the driveway. Viani proceeded to unload his tools as well as Bowles' camping gear. In the process he tossed Bowles' bedroll from the truck bed onto the driveway. Unknown to Viani, the bedroll contained a loaded pistol which discharged when the bedroll hit the ground, the bullet wounding Viani.

There are three (3) separate policies of liability insurance which arguably provide coverage for the accident. Bowles had a "homeowner's policy" issued by Aetna covering his Boise residence with a policy limit of $50,000. Bowles also owned a "comprehensive general-automobile liability" policy issued by American Casualty, the limits of which were $100,000. Viani owned a "Crusader" automobile liability policy issued by Allstate, specifically covering his pickup with him as the "named insured," the limits being $10,000.

Viani instituted an action against Bowles for negligently causing his wounding seeking $48,000 in damages. Bowles' insurer, Aetna, tendered the defense of the action to Allstate as Bowles was an "omnibus insured" under Allstate's policy. Allstate accepted and defended Bowles at the trial where the jury returned a $14,622 verdict. Viani's attempt at executing his judgment against Bowles proved fruitless and he thereupon instituted this action against these insurance companies to satisfy the judgment.

## EFFECT OF THE PARTIAL SUMMARY JUDGMENT

Before discussing the separate issues presented by the appellants for resolution, a procedural question raised at oral argument must be answered. Viani's amended complaint [1] was duly answered by each of the insurers. Additionally, Allstate cross-complained against Aetna for its costs of investigation and defense of Bowles. Thereafter various affidavits [2] and a deposition, plus exhibits consisting of the three policies, related correspondence, along with the pleadings and jury instructions of the Viani v. Bowles trial were submitted. The case was discussed at a pre-trial conference where the parties agreed that certain of the issues could be treated as having been submitted to the court on motions for summary judgment. They also stipulated that the portion of Viani's trial memorandum or brief describing Viani's agreement with Bowles could be considered by the court as the facts related to the alleged employer-employee relationship (discussed *infra*).

The district court entered an order for partial summary judgment which rejected certain defenses that the insurance companies raised against Viani,[3] and essentially decided that each insurance company was separately liable to Viani on its policy. The partial summary judgment order left

1. Viani's complaint, filed Dec. 30, 1968, did not name American Casualty as a party defendant. On April 22, 1969, Viani's motion to file his "amended complaint" was granted. The latter pleading is much the same except for adding another defendant, American Casualty.

2. The affidavit of Bowles was apparently not considered by the court per agreement of the parties.

3. Those defenses will be discussed *infra*.

for resolution at trial the issue of the conflicting "other insurance" clauses contained in each policy, the question of which company was to pay for the defense of Bowles, and the apportioning of payment of Viani's judgment and attorney fees among the insurers. As it turned out the actual trial of these remaining issues was abbreviated; the court received evidence limited to attorney fees of Viani and the insurers.

The question has been raised whether those issues resolved by the order for partial summary judgment are subject to review here in that none of the appellants appealed from that order but rather appealed only from the final judgment.

The partial summary judgment order entered by the district court is in effect a pre-trial order resolving, for purposes of the case, those questions about which there was no factual dispute and noting what specific issues remained for trial. This order remained subject to subsequent revision by the court and thus is an interlocutory order. I.R.C.P. 56(c) provides that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

In the present action there remained after the entry of the partial summary judgment the question of the amount of attorney fees due plaintiff as well as the question whether each of the three insurers would be liable to some extent in light of the "other insurance" clauses. Thus from the standpoint of plaintiff all his requested relief had not been disposed of by the court and the summary judgment was not a final judgment. I.R.C.P. 54(b); Gerry v. Johnston, 85 Idaho 226, 378 P.2d 198 (1963); Clear v. Marvin, 83 Idaho 399, 363 P.2d 355 (1961); 6 Moore's Fed.Practice §§ 56.20–56.21.

I.R.C.P. 54(b) is also in another way controlling, as there was a cross-claim by Allstate against Aetna. In such a case, in order to make a particular decision a final judgment, the district court must expressly determine there is no just reason for delay and expressly direct entry of judgment. Absent such determination, as is the case here, the order for partial summary judgment "shall not terminate the action as to any of the claims."

The relationship of I.R.C.P. 54(a) and I.C. §§ 13–201 and 13–219 also must be noted. Rule 54(a) defines judgment as including a decree and any order from which an appeal lies; what is appealable is governed specifically by statute. I.C. § 13–201 defines a judgment as appealable if it is a "final judgment in an action or special proceeding commenced in a district court." A judgment in this sense means a "final determination of the rights of the parties." I.C.R. § 10–701. I.C. § 13–219 makes clear what this Court may review by stating that appealable decisions and orders from which an appeal is *not* taken cannot be reviewed. As the partial summary judgment was not appealable it constitutes an "intermediate order or decision" affecting the final judgment and may therefore be reviewed under I.C. § 13–219. *See* Maple v. Williams, 15 Idaho 642, 98 P. 848 (1908).

## NOTICE OF OCCURRENCE AND SUIT TO AMERICAN CASUALTY

American Casualty has assigned as error both the conclusion that it received sufficient notice of the injury to Viani caused by its insured, Bowles, and the conclusion that any defects in the notice to American Casualty did not result in prejudice to its position. The heart of its appeal is that the undisputed facts show, as a matter of law, prejudice to its position sufficient to constitute a complete defense to its contractual duty to pay the tort liability of Bowles (presuming its other defenses fail.)

The facts on this issue are not in dispute. After the accident Bowles notified the insurance agent in Boise who had sold him both the Aetna and the American Casualty policies that the accidental shooting had occurred. (It is not apparent from the record whether the notification was writ-

ten.) The agent, Mr. Summers, stated in his affidavit that his firm did not pass along notice of the accident to anyone else connected with American Casualty. Apparently the subject of the accident may have been discussed by an "adjuster" employed by Aetna and a Mr. Casey, a claims agent in Boise employed by American Casualty. The adjuster, in his affidavit, asserts that in conversation Mr. Casey stated he or American Casualty was not interested in the matter.

Whether or not American Casualty received notice of the accident, it is unrefuted that it did not receive notice of the Viani v. Bowles action, nor were copies of the summons and complaint sent to it. Nothing in the record suggests a local agent for American Casualty was provided with suit papers. No demand was ever made on American Casualty to defend Bowles either by Bowles himself or by the two other insurance companies. The judgment against Bowles became final before American received a demand for payment from Viani; as mentioned in note 1, *supra*, Viani initially instituted this action only against Allstate and Aetna. Only after this second action was filed did Viani bring American Casualty in as a party defendant.

The American Casualty policy contains these provisions relating to notice of accident and suit:

## "CONDITIONS

"10. Notice of Accident or Occurrence: When an accident or occurrence occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident or occurrence, the names and addresses of the injured and of available witnesses."

"11. Notice of Claim or Suit: If claim is made or suit is brought against the in-

sured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

"13. Action Against Company: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

■ Under Idaho law, conditions of the type set forth above from the American Casualty liability policy are "valid, reasonable requirements, designed to afford the insurer an opportunity to defend, and to protect it against possible collusion between the assured and persons claiming covered damages * * *." Leach v. Farmer's Automobile Interinsurance Exch., 70 Idaho 156, 160, 213 P.2d 920, 923 (1950). The same case also provides that "[v]iolations of conditions by the assured will not release the insurer unless it is prejudiced by the violation." 70 Idaho at 160, 213 P.2d at 923.

At this juncture we must face the contentions of Aetna and Allstate that although Bowles did not comply whatsoever with "Condition 11," American Casualty has not shown prejudice to its interests. American Casualty takes the position that prejudice is presumed when the insurer is not provided the opportunity to defend, or, at a minimum, to participate in the defense of an action maintained against its insured. Notwithstanding any presumption of prejudice, American Casualty contends the undisputed facts establish prejudice of the kind which relieves it of any duty to pay the Viani v. Bowles judgment.

The arguments of the appellant insurance companies have focused on whether or not American Casualty was actually prejudiced by failure of its insured, Bowles, to give notice of the suit. Numer-

ous cases have been cited dealing generally with disputes over "notice" and "cooperation" conditions in liability policies. Appellants and respondent are agreed that no notice of suit was given as required by "Condition 11" and we have concluded that the appeal taken by American Casualty can be resolved by applying the legal principles governing "notice of suit" requirements in liability insurance policies. The issue is, then, whether a total failure by the insured, Bowles, to comply with a notice of suit condition, which is expressly made a condition precedent to recovery, completely relieves the insurer of liability under the policy. In this instance the insurer, American Casualty, was entitled to notice of suit.

At the outset, although not cited to the Court by any of the parties, we note this Court's decision in Berg v. Associated Employers Reciprocal and Illinois Indem. Exch., 47 Idaho 386, 279 P. 627 (1929) (Wm. E. Lee, J., dissenting). The policy involved there contained a notice of suit condition which expressly made any insurance available under the indemnity policy "subject to" the notice condition. The insurer had been notified of the accident, but there had been no compliance with the notice of suit condition. It was clear the insurer had no notice of the pendency of the action against its insured, but only learned of it after the judgment became final. The receiver for the insured corporation brought an action on the contract of indemnity and recovered a judgment. On appeal the judgment was reversed, which

decision was allowed to stand after a rehearing of the cause. The Court reasoned that an insured would be allowed certain leeway as against a rule of strict compliance with the notice of suit condition. That is, "[a]t least a reasonable or substantial compliance with the provisions of the contract relating to the furnishing of the information therein required is a condition precedent to the maintenance of any action under a contract of the kind involved." 47 Idaho at 392, 279 P. at 628. Additionally, the Court found no excuse offered by the insured to explain the delay. There being no reasonable compliance by the insured nor circumstances excusing strict compliance, the Court held the insurer was not liable on its policy.

In Leach v. Farmer's Automobile Ins. Exch., *supra,* the Court was presented with the single issue of whether the insured's failure to give the insurer "written" notice of the accident was a defense to an action against the insurer. The insured had given immediate "oral" notice which was accepted and acted upon by the insurer. Although not apparent from the Court's opinion, the notice condition was a condition precedent to liability by the insurer under its policy.[4] Under the particular facts of that case the Court held that the "written" notice requirement was essentially waived by the actions of the insurer. Although not cited in *Leach,* the Berg v. Associated Employers Reciprocal and Illinois Indem. Exch. decision was followed in that this Court did not apply a rule of strict compliance with a condition where the insurer

4. The original record in this Court shows that the policy in *Leach* required written notice of the accident to be given "as soon as practicable." (Condition 1). Full compliance with that condition was expressly made a "condition precedent" to an action against the insurer (Condition 4).

Reference should be made to the Nevada Supreme Court's opinion in State Farm Mut. Auto. Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606, 18 A.L.R.2d 431 (1950), which discussed the *Leach* decision. Two points must be clarified concerning the *Leach* opinion. First, the

Nevada court categorized *Leach* as a case where the policy at issue did *not* make compliance with the notice condition a condition precedent; this, of course, is incorrect. Second, any language in the *Leach* opinion relating to *delay* in giving notice of accident *or* suit was not related to the issue facing the Court as there was an unchallenged finding of fact that oral notice was given immediately after the insureds learned of the accident, and it was undisputed that suit papers were promptly forwarded to the insurer.

was not prevented from making a timely defense or otherwise substantially hampered in its defense.

A survey of the cases has not produced an instance where a complete breach of a notice of suit requirement, which is a condition precedent, such that the insurer was never aware of the suit, did not constitute a total defense to liability under the policy. For example, in National Surety Corp. v. Dotson, 270 F.2d 460 (6th Cir. 1959), the insured failed to ever forward the suit papers and a final judgment was entered before the insurer became aware of the matter. The court held the insurer could rely on the notice of suit proviso which was a condition precedent to liability. The court reasoned that the policy condition of forwarding suit papers was clearly written and was also a condition independent of the notice of accident provision.

In Artukovich v. St. Paul-Mercury Indem. Co., 150 Cal.App.2d 312, 310 P.2d 461 (1957), Courtney v. Stapp, 232 Miss. 752, 100 So.2d 606 (1958), and Sims TV, Inc. v. Fireman's Fund Ins. Co., 108 Ga.App. 41, 131 S.E.2d 790 (1963), where on similar facts the insurer failed to receive suit papers although the policy made such a condition precedent, the courts likewise upheld the insurer's defense.

We find the opinion in Sears, Roebuck & Co. v. Hartford Acc. & Indem. Co., 50 Wash.2d 443, 313 P.2d 347 (1957), applicable here. There the insured (Sears) had overlooked the existence of the policy and had only given notice of the accident and the suit, conditions precedent in the policy, about one week before the liability suit came on for trial. Counsel for Sears handled the matter and settled the claim. No contention was made that Sears' counsel had not competently handled the litigation or that the settlement was too generous. The court stated that Sears offered no acceptable excuse and held the insurer released from liability. The following words are instructive:

"The result we reach, in no way imputes any fault to counsel for Sears for their handling of the Bench claim and suit. * * * The fact remains that Hartford had reserved to itself the right to have the case investigated, prepared, and presented by counsel of its own choosing. To be deprived of that right constitutes prejudice, however imponderable the damages, and however efficient and competent the attorneys retained by the insured.

We have considered the issue of prejudice to Hartford, only because that issue was considered by the trial court and argued in the briefs. Our view is that in this case it was entirely immaterial whether Hartford was prejudiced or not. The cases recognize a distinction between policies in which notice to the insurer of the accident, and notice to the insurer of any claim or suit, are made a condition precedent to any suit against the company, and those policies in which there is no express provision making the insured's failure to give such notice a ground of forfeiture or a condition precedent. It is in these latter cases that the question of whether the insured is prejudiced by the failure to give notice of the accident or of suit is considered.

The rule established by the great weight of authority is that where, as in the present case, notice of the accident and forwarding of any 'demand, notice, summons or other process' are specifically made a condition precedent to any action against the insurer by the contract of insurance, the failure to give a reasonably timely notice of the accident or of the receipt of any 'demand, notice, summons or other process' will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted. [citations]." 313 P.2d at 353.

In holding for American Casualty we recognize that an insurer has certain business interests which it is entitled to protect. As illustrated by the record here, it is entitled to some degree of control over

the litigation, or, where there are multiple insurers, to refuse or accept defense of the action. Likewise, it is entitled to independently review settlement offers or make its own settlement offers. Foremost, it is entitled to see that crucial issues which could affect its eventual liability were tried and all relevant matters examined. Here, for instance, one of the insurers, Allstate, disclaims all liability under its policy due to an employer-employee policy exception. This matter clearly is of interest to American Casualty as well as Aetna, yet American Casualty never had an opportunity to contest this issue, or, insure full exploration of the issue at the first trial on the merits. Mention might also be made that the negligence of Bowles was contested and that no appeal was taken. While not suggesting the original judgment is in any way wrong, it would seem American Casualty would have been entitled to its own opinion and opportunity to further litigate had it chosen to do so.

The numerous jurisdictions which have decided cases involving the insured's partial or complete non-compliance with the notice of accident and/or suit conditions, which are conditions precedent to recovery, are split on the issue whether prejudice to the insurer is material in the absence of excuse or waiver. Thus, for example, in Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 106 N.W.2d 86 (1960), a "substantial breach" of a condition precedent relating to notice not excused, legally justified or waived, gives rise to a rebuttable presumption of prejudice to the insurer; however, lack of prejudice may be shown by the insured or the claimant.

The courts in Sears, Roebuck & Co. v. Hartford Accident & Indem. Co., *supra,* State Farm Mut. Auto. Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606, 18 A.L.R. 2d 431 (1950), and most recently in Members Mut. Ins. Co. v. Cutaia, 476 S.W.2d 278 (Tex.1972) (Reavley, J., dissenting), each held that lack of prejudice to the insurer was immaterial where the insured failed to perform the condition precedent of giving notice of the suit and forwarding summons and complaint within a reasonable time.[5]

The third view, influenced in part by cases involving failure of the insured to cooperate with his insurer, is to the effect that despite a breach of the "notice condition precedent" the insurer must show actual or substantial prejudice to its position. Lindus v. No. Ins. Co. of N. Y., 103 Ariz. 160, 438 P.2d 311 (1968); cf. State Farm Mut. Auto. Ins. Co. v. Gonzales, 83 N.M. 296, 491 P.2d 513 (1971); Hanover Ins. Co. v. Carroll, 241 Cal.App.2d 558, 50 Cal. Rptr. 704 (1966), *but see* Abrams v. American Fid. & Cas. Co., 32 Cal.2d 233, 195 P. 2d 797 (1948);[6] and Squires v. Nat'l

5. *See also*: New Amsterdam Cas. Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (1945); Bazar v. Great Am. Idem. Co., 306 N.Y. 481, 119 N.E.2d 346 (1954); Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957, Desmond, J., and Conway, C. J., dissenting); Pawtucket Mut. Ins. Co. v. Lebrecht, 104 N.H. 465, 190 A.2d 420 (1963); Ewing v. Colorado Farm Mut. Cas. Co., 133 Colo. 447, 296 P.2d 1040 (1956); Certified Indem. Co. v. Thun, 165 Colo. 354, 439 P.2d 28 (1968); Wetzbarger v. Eisen, 475 P.2d 637 (Colo.Ct.Apps.1970); Overturf v. Nat'l Union Fire Ins. Co., 470 P.2d 600 (Colo.Ct.Apps.1970); Wolverine Ins. Co. v. Sorrough, 122 Ga. App. 556, 177 S.E.2d 819 (1970); American Fire & Cas. Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579 (1959); Bennett v. Swift & Co., 170 Ohio St. 168, 163 N.E.2d 362 (1959); Baker v. Hartford Acc. and Indem. Co., 346 Mass. 774, 194 N.E.2d 635 (1963); Meierdierck v. Miller, 394 Pa. 484, 147 A.2d 406 (1959, Bell, J., dissenting); Aetna Cas. & Sur. Co. of Hartford, Conn. v. Martin, 377 S.W.2d 583 (Ky.1964).

6. The California Supreme Court has not clearly spoken on this issue, i. e. liability of the insurer, where there has been a failure to give notice which is expressly made a condition precedent to recovery on the policy. The *Abrams* decision suggests such a condition precedent would be upheld upon a failure to give notice. 195 P.2d at 799. Yet in dicta, the court in Campbell v. Allstate Ins. Co., 60 Cal. 2d 303, 32 Cal.Rptr. 827, 384 P.2d 155

Grange Mut. Ins. Co., 247 S.C. 58, 145 S. E.2d 673 (1965).

To settle the state of Idaho law the Court has concluded the majority rule as expressed in the Nevada and Washington cases, *supra,* is the better reasoned rule and is fair to the various interests. In reaching this decision we are essentially adhering to the rule originally announced by this Court in Berg v. Associated Employers Recip. and Ill. Indem. Exch., 47 Idaho 386, 279 P. 627 (1929). That rule is not harsh; it allows the insured opportunity to offer various excuses for non-compliance as well as a factual determination as to whether notice was given "as soon as practical" or "immediately" depending on the specific language of the condition. As applied in the *Leach* decision, *supra,* there is flexibility built into the rule which allows for substantial performance of the condition. On the other hand, the rule has some firmness. It not only recognizes the legitimate business interests of insurers but it also recognizes, and gives effect to, the express provisions of the insurance contract which we are admonished to do by statute. I.C. § 41–1822.[7]

■ No excuse is offered by Viani for Bowles' failure to forward suit papers to American Casualty. No waiver appears in the record because American Casualty never took any steps to investigate the claim. In that American Casualty originally was not even named in Viani's suit to collect his judgment, we conclude American Casualty was in fact completely overlooked and disregarded. The judgment entered by the district court against American Casualty must be reversed.

## DOES ALLSTATE'S POLICY COVER THE SHOOTING DURING UNLOADING OF GUN FROM VEHICLE

Allstate contends that the negligently caused discharge of the pistol is not causally related to the use of the pickup and therefore the Allstate policy provides no protection to Bowles, an "omnibus insured" in that policy.

The Allstate policy provides in pertinent part:

"Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:

A. bodily injury sustained by any person, and

B. * * *

arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile."

To briefly restate the record on this point, Bowles packed his loaded pistol in his bedroll, which, along with other gear, was carried in the pickup bed on their return to Boise. Bowles asked Viani to unload the bedroll during which the pistol was caused to discharge. The record shows that Bowles considered his pistol to be an ordinary item in his camping gear inventory.

There is a sharp split of authority as to whether automobile liability policies such as the one here provide coverage for gunshot accidents. Judicial attempts at construing auto liability policies in gunshot cases have in turn been targets for scholarly marksmen.[8] For, purposes of our analysis here we believe the only relevant

---

(1963), cited *Abrams* for the proposition that "prejudice must be shown with respect to breach of a notice clause." 32 Cal.Rptr. 828, 384 P.2d 156. Part of the confusion may be caused because one can not determine if the notice proviso in *Abrams* was a condition precedent.

7. I.C. § 41–1822. "Construction of policies.—Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy * * *."

8. Note, 45 Neb.L.R. 810; Note, 21 Md. L.R. 270 (1961).

cases for consideration are those which can be conceptually categorized as dealing with the firearm in terms of it being loaded on, or unloaded from, an automobile where the intent was to carry it therein like luggage, gear, or freight.[9]

Appellant Allstate contends that in construing the terms of its policy we should limit coverage to occurrences where the vehicle was used in its "functional" sense or where there is some causal connection between the automobile and the occurrence. *See* Brenner v. Aetna Ins. Co., 8 Ariz.App. 272, 445 P.2d 474 (1968). Allstate stresses the ordinary or reasonable meaning and interpretation of the policy provision, relying on the reasoning employed in another automobile-gunshot case, National Union F. Ins. Co. of Pittsburgh, Pa. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (1966).

We note at the outset that this occurrence does reasonably comport to what an ordinary person would deem loading and unloading of the pickup truck. "Loading" or "unloading," of course, must be given their plain and ordinary meaning. Entz v. Fidelity & Cas. Co. of New York, 64 Cal. 2d 379, 50 Cal.Rptr. 190, 412 P.2d 382 (1966); Penley v. Gulf Ins. Co., 414 P.2d 305 (Okl.1966); Richfield Oil Corp. v. Harbor Ins. Co., 85 Nev. 185, 452 P.2d 462 (1969). As phrased in this policy provision, "loading and unloading" expand the meaning or scope of what is intended by the term "use" of the insured automobile. Pacific Auto. Ins. Co. v. Commercial Cas. Ins. Co. of N. Y., 108 Utah 500, 161 P.2d 423 (1945); Penley v. Gulf Ins. Co., *supra.* (*But see* Liberty Mut. Ins. Co. v. Truck

Ins. Exch., 245 Or. 30, 420 P.2d 66 (1966), where there was no "loading or unloading" phrase in the policy yet the acts of loading and unloading were held to constitute "using" the vehicle within the meaning of the policy.)

Two federal court decisions have held the insurers liable on their policies for gunshot accidents in situations where the tortfeasors were in the process of "loading" the firearm into the vehicle. Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (E.D. Mich.1961); Laviana v. Shelby Mut. Ins. Co., 224 F.Supp. 563 (D.Vt.1963). In those cases the individuals involved were hunters and the guns were about to be placed inside the vehicles in the sense that one would stow luggage inside a vehicle.[10] In Morari v. Atlantic Mut. Fire Ins. Co., 105 Ariz. 537, 468 P.2d 564 (1970, Udall, J., dissenting), the Arizona Supreme Court held the insurer liable where the driver of the vehicle, intending to shoot a deer, stepped out of the vehicle, reached into the car for his loaded gun, the gun then discharging causing injury to another. These cases seem factually analogous as here the pistol was part of the camping gear of the parties which had been loaded onto the pickup bed before the two men returned to Boise.

We are especially persuaded by the reasoning of the Court of Civil Appeals of Texas in Dorsey v. Fidelity Union Cas. Co., 52 S.W.2d 775 (1932). As in the latter federal cases, a hunter was preparing to load his firearm into the vehicle when it discharged. The issue before the Texas court was whether the injury resulted from the operation of the vehicle. We approve

---

9. Another category of cases seems to fit into a factual pattern where the firearm is handled by a passenger seated inside a vehicle at the time of the accidental shooting. We express no opinion on the results of these cases. They include: Azar v. Employers Cas. Co., 495 P.2d 554 (Colo.1972) (Pringle, C. J., and Kelley, J., dissenting); Mason v. Celina Mut. Ins. Co., 161 Colo. 442, 423 P.2d 24 (1967); Nat'l Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N.W.2d

821 (1966); Brenner v. Aetna Ins. Co., 8 Ariz.App. 272, 445 P.2d 474 (1968); United States Fidelity & Guar. Co. v. Western Fire Ins. Co., 450 S.W.2d 491 (Ky.1970).

10. A third federal case, Fidelity and Cas. Co. of New York v. Lott, 273 F.2d 500 (5th Cir. 1960), concerned a hunting accident where the roof of the vehicle was used by a hunter as a gunrest. The court held the vehicle was being used in terms of the policy.

the following language from *Dorsey*, and consider it to be quite relevant here, especially considering the similarity of the factual situations.

"In order for an injury to be the result of operating or riding in an automobile, it is not necessary that the automobile be the agency that sets in motion the act which causes the injury. It is sufficient if the use of the automobile in the manner and for the purpose for which it is being used reasonably and naturally exposes the driver or occupant thereof to the danger of being so injured as a consequence of such use. There are certain well-known dangers, from wholly independent sources, to which everyone is naturally exposed, without fault on his part, in using an automobile. For example, he may be injured by gravel thrown into the car by other vehicles or he may be struck by other cars negligently operated. Automobiles and trucks are sometimes used for the transportation of freight, and the operator thereof or those riding therein may be injured as the result of the loading of the freight into the car or the unloading of the freight therefrom. Loading or unloading of freight is a part of the use of the conveyance, and, if one while so riding in or operating it is naturally exposed to such danger and is injured thereby, he is injured as the result of operating or riding in the conveyance. [Citations.]

In the case at bar, the parties had gone to the country for the purpose of hunting ducks, and intended to return to the city. The automobile was being used as a mode of conveyance, and Dorsey was the operator thereof. It was contemplated that the car would be used not only to convey the parties but their guns and ammunition. It was necessary that the guns be loaded into the car if they were to be transported to the city. Dorsey was in the car waiting for it to be loaded and for the purpose of driving it to the city as soon as the guns had been placed therein. The companion who fired the gun was not a stranger to the transaction, and he did not appear on the scene by accident. He and Dorsey were engaged in a common purpose with a common design, and were working in co-operation with each other. The transportation of the guns was a part of the common purpose. The companion was removing the shells from the gun for the purpose of loading it into the car in keeping with the common design. The removing of the shells from the gun was so closely connected with the loading thereof into the car as to constitute a part thereof. Dorsey by riding in the car and operating it for the purpose for which it was being used, to wit, the hauling of the men and their guns, was thus brought into close proximity to the gun and exposed to the danger of being injured thereby while the guns were being prepared and loaded into the car. Such danger was necessarily incident to the use of the car for the purpose of which it was then being used, and the injury was one of the consequences of such use. We therefore hold that the insured was injured as the result of operating or riding in the car, and is entitled to recover the amount stipulated in the policy." 52 S.W.2d at 776–777.

■ We conclude, then, that the Allstate policy does provide coverage to Viani for the gunshot accident as the occurrence arose during the loading and unloading of the pickup.

## THE CLAIMED EMPLOYER-EM-PLOYEE OR CO-EMPLOYEE RE-LATIONSHIP OF BOWLES AND VIANI

Allstate assigns as error the finding and conclusion of the district court that Allstate's policy exclusions which expressly exclude coverage to an employee or co-employee of an insured were not applicable. The Allstate policy in this regard reads:

"The following persons are insured under this Part [I]

1. * * *

2. * * *

3. Any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured;

\* \* \* \* \* \*

This Part I does not apply to:

1. \* \* \*

\* \* \* \* \* \*

4. bodily injury to an employee of the insured arising out of and in the course of (a) domestic employment by the insured, if benefits therefor are either payable or required to be provided under any workmen's compensation law, or (b) any other employment by the insured;

5. bodily injury to any fellow employee of the insured injured in the course of his employment if such injury arises out of the use of an automobile in the business of his employer, but this exclusion does not apply to the named insured with respect to injury sustained by any such fellow employee;

\* \* \*."

The district court determined that the issues raised by Allstate had previously been litigated and resolved against Allstate's insured, Bowles, in the original action. Resolution of this matter raised by Allstate requires a review of the issues at the original trial and of the facts concerning Viani's work on the Bonny mountain residence.

At the first trial Bowles offered as a defense the workmen's compensation law, which, if found applicable, would have been Viani's exclusive remedy. To that end the jury was instructed that if Bowles and Viani were co-employees or if Bowles were found to be Viani's employer, Viani's action must fail. However, the jury was also instructed that if Viani were found to be either a "casual" employee of Bonny or Bowles or an "independent contractor" then Viani could still maintain his action against Bowles.

Allstate has extensively argued here that the jury could have found Viani to have been a "casual" employee or independent contractor but that based on the record it is clear Viani was an employee, albeit "casual," of Bowles and therefore coverage to Bowles acting as an employer is excluded.

At the trial of the present action the court considered the various written records of the first trial as well as certain statements of facts set forth in Viani's pre-trial memorandum in which all the parties concurred. It is the Court's conclusion that based on this record the district court was correct in concluding that Viani was not a co-employee with, or employee of Bowles.

It should be noted that Allstate stands on the record as it is presently constituted and does not allude to the existence of other facts. Allstate takes the position that the employment relationship is an inescapable conclusion. In this regard it overlooks certain points. First, it was agreed that Viani had worked on two prior occasions on the Bonny project in the capacity of independent contractor. Second, Bowles was an architect, not a building contractor. Bowles asked Viani to work some more on the house but informed him he would have to get his pay from the general contractor.

It is reasonable to draw the conclusion from these facts that Viani was again acting as an independent contractor on the day in question. Based on the prior work Viani had performed the court could infer the pattern remained the same. Bowles' unwillingness to pay Viani himself indicates Bowles regarded the arrangement as another independent undertaking by Viani in much the same capacity as the general contractor acted. Furthermore, the court could have reasonably concluded that even if Bowles and Viani were part of an employment relationship, that relationship had terminated by the time the men had finished working on the Bonny house and had returned to Boise. Certainly the employment relationship had to terminate at some point and it is not unreasonable to conclude it did so when the men started rearranging their gear preparatory to leaving

for an inspection of the mining claims—at which point in time the accident occurred.

We interpret the record as permitting these conclusions which, of course, results in coverage of the Allstate policy to Bowles. This holding comports with the rule that a policy will generally be construed so that the insurer bears the burden of proving that the asserted exclusion is applicable. Harman v. Northwestern Mut. Life Ins. Co., 91 Idaho 719, 429 P.2d 849 (1967). Allstate has urged its interpretation of the record be adopted, but without more than these arguments, in light of what was stated above, Allstate's contention that the exclusion is applicable to Bowles is without merit.

### "OTHER INSURANCE" CLAUSES

In that American Casualty is relieved of liability under its policy, the remaining question is what portion of the judgment is to be borne by Allstate and what portion by Aetna. Allstate's policy, with liability limits of $10,000, contains this clause regarding "other insurance":

> "If there is other insurance Allstate shall not be liable under this Part I for a greater proportion of any loss than the applicable limit of liability stated on the Supplement Page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance."

And, Aetna's policy, with liability limits of $50,000, provides for "other insurance" thus:

> "If the Insured has other insurance against a loss covered by this policy, this Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against

such loss, provided that with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or midget automobile at the premises or the ways immediately adjoining or (2) watercraft, this insurance shall not apply to the extent that any valid and collectible insurance, whether on a primary, excess or contingent basis, is available to the Insured."

Allstate interprets its other insurance clause as providing excess insurance in that the vehicle, as to Bowles, was "non-owned." Aetna contends the vehicle involved was the one described in the policy, hence the vehicle was "owned" by the policyholder. Adopting Aetna's position would mean the Allstate insurance is to be prorated with other insurance (assuming Allstate's policy provisions did not conflict with provisions of Aetna's policy). We agree with the interpretation that this was an *owned* vehicle as that term is used in the Allstate policy.

On page 1 of the Allstate policy is the statement "The following persons are insured under this Part," followed by four categories. Number 3, which describes Bowles in this instance, reads:

> "Any other person [Bowles] with respect *to the owned automobile,* provided the actual use thereof is with the permission of the named insured." (Emphasis added.)

Further, under "definitions," the policy provides:

> "2. Automobiles covered
>
> (a) 'owned automobile' means the vehicle described on the Supplement Page [Viani's pickup], and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured;
>
> \*   \*   \*   \*   \*   \*
>
> (e) 'non-owned automobile' means an automobile, including a trailer, *not*

*owned by the named insured* or any relative, other than a temporary substitute automobile[.]" (Emphasis added.)

It seems clear from these clauses that the pickup truck owned by Viani was, for purposes of the policy, including the "other insurance" clause, an "owned" vehicle regardless of whether the driver was Viani or Bowles.

The question, then, is to determine what amount of the judgment Allstate will pay with its "pro rata" clause and what amount Aetna will pay under its clause which, although partly phrased in "escape" clause terminology, actually provides for excess coverage "to the extent" the insured has other insurance. *See* Preferred Risk Mut. Ins. Co. v. Commercial Union Ins. Co. of New York, 121 Ga.App. 367, 173 S.E.2d 730 (1970). Allstate urges the Court to adopt a rule of pro-ration for the reason that the "other insurance" clauses, being incapable of logical resolution, are mutually repugnant. This is the rule announced by the Oregon Supreme Court in Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, as modified by 219 Or. 110, 346 P.2d 643, 76 A.L.R.2d 485 (1959). *See* Comment, "Other Insurance" Clauses: The Lamb-Weston Doctrine, 47 Or.L.R. 430 (1968). Aetna contends that the two clauses can be logically reconciled as was accomplished by the court in Continental Cas. Co. v. American Fid. & Cas. Co., 275 F.2d 381 (7th Cir. 1960), and McFarland v. Chicago Exp., Inc., 200 F.2d 5 (7th Cir. 1952). *See* 8 Appleman, Insurance Law and Practice, § 4914, p. 400.

We are constrained by the differences in the language of the two policies to attempt to give them their intended effect. Zurich Gen. Acc. & Liab. Ins. Co. v. Clamor, 124 F.2d 717 (7th Cir. 1941); American Surety Co. v. Canal Ins. Co., 258 F.2d 934 (4th Cir. 1958). The majority view is in accord. *See* Watson, The "Other Insurance" Dilemma, 16 Federation Ins. Counsel Q. 47 (1966); Comment, "Other Insurance" Clauses: The Lamb-Weston Doc-

trine, *supra*; Annot., 76 A.L.R.2d 502. The general rule is that an excess provision will control over a pro rata provision and that the insurance policy of the owner of the vehicle is "other insurance" within the meaning of the excess policy's other insurance clause. American Auto. Ins. Co. v. Republic Indem. Co., 52 Cal.2d 507, 341 P.2d 675 (Cal.1959). We adopt the California Supreme Court's reasoning in that case and conclude that the insurance provided by Allstate is the "primary" coverage and that provided by Aetna is excess. The court stated:

"The language of the 'other insurance' clauses contained in both policies is substantially the same. The clauses consist of two parts; the first provides generally for prorating where there is other insurance covering the loss, and the second provides, as a specific exception, that when the named insured is driving a car not owned by him the insurance will be excess over all other insurance. Because American's named insured, Steinberg, was driving another person's car, American's insurance falls within the exception specified in its policy if the insurance of Republic is treated as other insurance. On the other hand, Republic's insurance comes under the prorate provision in its policy if American's insurance is treated as other insurance.

Where 'other insurance' clauses of this type appear in the automobile liability policies of both the driver and the owner, the cases have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy. Pleasant Valley Lima Bean Growers and Warehouse Ass'n v. Cal-Farm Ins. Co., 142 Cal.App.2d 126, 136, 298 P.2d 109; General Insurance Co. of America v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289, 295; Farm Bureau Mut. Auto. Ins. Co. v. Preferred Acc. Ins. Co., D.C., 78 F.Supp. 561, 565;

Citizens Casualty Co. of New York v. Allied Mutual Ins. Co., 217 Md. 494, 144 A.2d 73.

These cases are based on the reasoning that the policy of the owner is other insurance within the meaning of the excess provision of the driver's policy and that therefore this provision is effective; they do not consider the driver's policy as other insurance within the meaning of the prorate provision of the owner's policy and accordingly treat the prorate provision as not operative. Although this reasoning has been referred to as circular, depending on which policy one happens to read first (see Oregon Auto. Ins. Co. v. United Fidelity & Guar. Co., 9 Cir., 195 F.2d 958, 960), we have concluded that the result reached in the cases cited above is correct. When the 'other insurance' clauses are construed in accordance with their purpose, the prorate clause in the owner's policy, as we shall see, is not applicable to a situation like the one involved here.

The 'other insurance' clause in American's policy is identical with that contained in the 'National Standard Automobile Policy,' used by the great majority of casualty insurers in the United States. See Faude, The 1955 Revision of the Standard Automobile Policy, Coverage: Insuring Agreements and Exclusions, 1955 Proceedings of the Section of Insurance Law of the American Bar Association, p. 48. Although Republic did not use the standard form, its 'other insurance' clause is substantially the same as that appearing in the standard policy. That policy as well as the policies involved here extends coverage to the named insured when he drives a car other than his own and also to any other person when driving the car of the named insured. For that reason there will be dual insurance when an accident is caused by a person not driving his own car and both the driver and the owner are insured under a standard policy. Clearly the excess provision of the 'other insurance' clause is intended to show how the loss should be borne in this frequently recurring situation. It is impossible, and could not have been intended, that the excess provision would govern with respect to the insurance of the driver and that at the same time the prorate provision would control with respect to the insurance of the owner because proration of the loss and treating the driver's insurance as excess over the insurance of the owner obviously lead to inconsistent results. The only construction of the 'other insurance' clause under which both its parts will be meaningful is that the *excess* provision alone controls in every situation which falls within its terms, such as when a person is driving the car of another and both the driver and the owner have insurance, and that the *prorate* provision alone governs in all other situations, for example, when more than one policy has been issued to the same person. When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy.

The judgment is affirmed." 341 P.2d at 677, 78, 79.

Aetna makes a further argument that despite the foregoing conclusion it still escapes liability for payment of any excess amount over $10,000 reasoning that at the date of the occurrence American Casualty provided Bowles with other valid and collectible insurance. Aetna contends that presuming American Casualty had been given notice, its policy could have paid the balance of the judgment, or at least it and Aetna would have shared that excess amount depending on how this Court reconciled the applicable "other insurance" clauses. Aetna relies on a line of authority stemming from Friedfeld v. Royal Indem. Co., 167 So.2d 586 (Ct.App.Fla.1964), cert. den., 174 So.2d 30 (Fla.1965).

We do not reach this issue as the Court has concluded that Aetna cannot avoid all

or part of its liability under its policy by untimely raising as a defense the existence of the other insurance when the record indicates that its representatives had actual knowledge of the American Casualty policy even before Viani filed his action against Bowles but made no attempt to involve American Casualty in that litigation. Thus Aetna's agent stated in his affidavit that he supplied Aetna's counsel with a copy of the American Casualty policy in November, 1966. Yet the record shows that no demand was ever made on American Casualty under its policy until *after* Viani filed this *present* action. Apparently Bowles only became aware that Aetna intended to stand on the "other insurance" provision in its policy when it filed its answer to the present action. We hold that Aetna cannot now avoid liability to its own insured by raising the defense of "other insurance" when Aetna did not reserve this defense at the outset. Bosko v. Pitts & Still, Inc., 75 Wash.2d 856, 454 P.2d 229 (1969).

Therefore, Allstate is liable to Viani to the extent of its policy limits and Aetna is liable for the balance of the judgment against Bowles.

## COSTS OF DEFENSE OF BOWLES

The district court determined that each of these insurance companies should bear one-third of the costs of the defense. In that American Casualty is now relieved of liability, this part of the judgment must be modified. We believe it is just for Allstate and Aetna to pay one-half of the defense costs regardless of the applicable limits of their respective policies. The defense costs are not related to policy limits but are essentially the same regardless of the size of the claim brought against the insured. Eicher v. Universal Underwriters, 250 Minn. 7, 83 N.W.2d 895 (1957); 7A Appleman, Ins. Law and Practice, § 4691, p. 511.

The judgment of the district court as to American Casualty is reversed. The cause is remanded to the district court to modify its judgment against Aetna and Allstate in accordance with the views expressed herein.

Respondent Viani is awarded his costs. Costs are also awarded to American Casualty. Costs on this appeal shall be divided equally between Aetna and Allstate.

McQUADE, C. J., and SCOGGIN and LODGE, District Judges, concur.

SHEPARD, Justice (specially concurring).

While I concur in the result reached by the majority opinion, I disagree with the burden it places on the insured who was only attempting to rely upon the insurance protection allegedly afforded him by the policy or policies which he purchased.

I do not believe that the record clearly indicates the existence or non-existence of facts which should be controlling in this action. Therefore a dissent is perhaps not justified. In my judgment, however, certain inferences flow from the facts which are of record and make questionable the validity of the majority opinion insofar as it releases American Casualty from any liability.

The American Casualty policy requires that the insured must give written notice of an "accident" or "an occurrence." The policy also requires that the Company shall be notified of any claim or suit brought against the insured. The policy further provides that no action shall lie against the Company without full compliance with the foregoing conditions. The majority opinion cites relevant case law to the effect that non-compliance with policy conditions should discharge an insurer. While I agree with such authority, I disagree with the conclusions of the majority opinion that the record before us indicates non-compliance with the policy conditions regarding notification of accident and of suit.

Bowles purchased both the Aetna and the American Casualty policies through one insurance company, to-wit: Summers-

Brooks. Following the accident Bowles notified that insurance agency of the accident. The Summers-Brooks Agency in turn referred the matter to the General Adjustment Bureau which purportedly represented Aetna. There is a dispute as to whether an American Casualty adjuster was also notified of the accident. The record does not reflect whatever negotiations may have been conducted by General Adjustment Bureau, nor does the record reveal any negotiations between American Casualty and the plaintiff Viani. In any event Viani filed the action against Bowles. The record only indicates that Bowles forwarded the summons and complaint to the law firm of Moffatt, Thomas, Barrett and Blanton.

The parties, the lower court and this court have been attempting, and continue to attempt, to resolve the question as to which insurance policy Bowles must look to for protection. I believe it is illogical to presume that Bowles, after having been sued by Viani, made a conscious decision as to which law firm representing which company he should advise of the litigation. Rather I think it is more logical to assume that Bowles advised his insurance agency that he had been sued and was advised by that agency to deliver the summons and complaint to a particular law firm. I think we may further assume that Bowles could have cared less to which law firm or insurance adjuster he was directed. At that point in time Bowles could only have been interested in securing some insurance protection from some company. Insofar as the record indicates, the same insurance agency represented both Aetna and American Casualty.

I strongly disagree with that portion of the majority opinion which required Bowles to notify both insurance companies of the accident and the law suit, notwithstanding that Bowles had purchased both policies through the same agency and had notified the agency of the accident and the litigation. From the standpoint of Bowles and Viani it was nothing but froward circumstance that the insurance agency saw fit to notify one of its principals, to-wit, Aetna, of the accident and the litigation, while at the same time failing to notify its other principal, American Casualty, of the litigation. If the controlling facts which are not reflected in the record support the presumptions in which I have indulged, then the majority opinion is erroneous insofar as it releases American Casualty from liability.